Sara MUSSIE, Petitioner,

v.

## U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 98–2019.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1999.

Decided April 9, 1999.

**ARGUED:** Diane Elizabeth McHugh–Martinez, Law Office of Mchugh–martinez, Washington, D.C., for Petitioner. Timothy Paul McIlmail, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Kar-

en Fletcher Torstenson, Assistant Director, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

Petition denied by published opinion. Judge LUTTIG wrote the opinion, in which Judge DIANA GRIBBON MOTZ and Judge TRAXLER joined.

## OPINION

LUTTIG, Circuit Judge:

Sara Mussie petitions for review of the Board of Immigration Appeals' denial of her application for asylum. Because the Board's findings that Mussie had been "firmly resettled" in a third country prior to seeking asylum and that Mussie was not entitled to invoke the exceptions to the "firm resettlement" bar were supported by substantial evidence, we deny the petition for review.

I.

Sara Mussie is a native and citizen of Ethiopia. During the 1970s, Mussie was an active member of the Ethiopia People's Revolutionary Party, an opposition group. As a result of her membership in that group, she was arrested, detained, and questioned on numerous occasions. On one such occasion, she was beaten and raped. In addition, her cousin was killed by members of the Ethiopian military after he was found hiding at her house.

In 1985, Mussie fled Ethiopia, via the Sudan, for Germany. Upon arriving in Germany, she applied for asylum, which she received in 1989. Although it is unclear whether Mussie ever attained permanent resident status in Germany, she was issued German travel documentation. While in Germany, Mussie received government-paid language schooling. She also received government assistance for

transportation, rent, and food. She held a job, paid taxes, and rented her own apartment.

During her time in Germany, Mussie claims she was subjected to a number of incidents of racial taunting and threats from neighbors, passers-by, and co-workers. Most notably, she claims that a man wearing neo-Nazi insignia elbowed her to the ground.[1] She further claims that, when she reported the incident to the police, they made a written report but took no further action.

On September 2, 1991, Mussie entered the United States on a six-month tourist visa. After that visa expired, Mussie filed an application for asylum in the United States, which was denied. In 1995, the INS charged Mussie with deportability. Before the immigration judge, Mussie conceded deportability, but applied for asylum and withholding of deportation. On September 5, 1996, the immigration judge denied both parts of the application and entered alternative orders of deportation to Germany and Ethiopia.

Mussie then appealed to the Board of Immigration Appeals, solely on the issue of asylum.[2] On June 19, 1998, the Board dismissed the appeal. The Board found that Mussie had been "firmly resettled" in Germany prior to seeking asylum and that Mussie failed to show that she was entitled to invoke either of the exceptions to the "firm resettlement" bar. From that decision, Mussie petitions for review.

## II.

The sole issue presented by Mussie's petition is whether the Board of Immigration Appeals correctly applied the "firm resettlement" bar in affirming the immigration judge's denial of Mussie's application for asylum. Under INS regulations, an alien may not obtain asylum if he has been "firmly resettled" in another country. 8 C.F.R. § 208.13(c)(2)(i)(B) (1998); see also 8 C.F.R. § 208.14(d)(2) (1996) (same). Mussie contends, first, that she had not been "firmly resettled" in Germany because it was unclear whether she had been granted permanent residency there, and second, that she qualifies for the narrow exceptions to the "firm resettlement" bar. We reject both of Mussie's arguments.

First, we conclude that the Board's finding that Mussie had been "firmly resettled" in Germany was supported by substantial evidence.

The relevant INS regulation states that "firm resettlement" occurs when an alien has received "an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 208.15 (1998). Once the "evidence indicates" that an alien has been "firmly resettled," the alien bears the "burden of proving by a preponderance of the evidence" that he has not been resettled. Id. § 208.13(c)(2)(ii); see also 8 C.F.R. § 208.14(c) (1996) (same).

Although, as the Board noted, the record is silent as to whether Mussie actually received a formal offer of permanent residency in Germany, the INS introduced sufficient "evidence indicating" that Mussie had received at least an offer of "some other type of permanent resettlement" in Germany, thereby meeting its evidentiary burden. As noted above, Mussie was granted asylum in Germany and was issued German travel documentation.[3] In

---

1. Mussie's written and oral testimony on this point are conflicting. In her written application for asylum, she stated that the man wore "Nazi badges and buttons," A.R. at 260, but in her oral testimony, she said that she did not remember "any signs" on the man's clothing, id. at 71.

2. Although the Board ruled that Mussie had abandoned her claim for withholding of de-

portation, it added that, even if she had not, her claim would still have failed because she did not demonstrate a clear probability of persecution either in Ethiopia or in Germany.

3. This documentation appears to have expired in 1993; however, the record contains no evidence that Mussie made any effort to have the documentation renewed.

addition, she lived in Germany for six years, during which time she received government assistance for language schooling, transportation, rent, and food; held a job; paid taxes; and rented her own apartment. "A duration of residence in a third country sufficient to support an inference of permanent resettlement in the absence of evidence to the contrary shifts the burden of proving absence of firm resettlement to the applicant." *Cheo v. INS,* 162 F.3d 1227, 1229–30 (9th Cir.1998); *cf. Abdalla v. INS,* 43 F.3d 1397, 1399–1400 (10th Cir. 1994) (same, in case in which asylum seeker had some form of "residence visa/permit" in third country but apparently not permanent resident status). Once the INS met its burden of introducing some evidence indicating that Mussie had been "firmly resettled" in Germany, Mussie bore the burden of demonstrating, by a preponderance of the evidence, that she had not been resettled. Because Mussie failed to introduce any evidence indicating that she had not been "firmly resettled," much less a preponderance of the evidence, we uphold the Board's finding.

 Second, we conclude that the Board's finding that Mussie was not entitled to invoke the exceptions to the "firm resettlement" bar was also supported by substantial evidence. Under INS regulations, an alien who has been firmly resettled in another country may still obtain asylum in the United States, provided that he can show either that he was in the country only as long as was necessary to arrange onward travel, *see* 8 C.F.R. § 208.15(a) (1998), or that his conditions of residency in the country were substantially and consciously restricted by the governing authority of the country, *see id.* § 208.15(b). Regarding § 208.15(a), Mussie evidently did not demonstrate that she was in Germany only as long as was necessary to arrange onward travel to the United States, in view of the fact that she lived there for some six years. Regarding § 208.15(b), although Mussie introduced ample—and indeed disturbing—evidence

of racism by private individuals in Germany, she failed to introduce any evidence that the German *government* imposed any restrictions on her residency, much less substantial and conscious restrictions. Because Mussie cannot invoke either of the exceptions to the "firm resettlement" bar, she cannot obtain asylum.

Accordingly, the petition for review is denied.

*PETITION DENIED.*