**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Su Hwa She,
                              *Petitioner,*

                v.

Eric H. Holder Jr., Attorney
General,
                              *Respondent.*

No. 06-71794

Agency No.
A71 582 092

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 14, 2010—San Francisco, California

Filed December 14, 2010

Before: Procter Hug, Jr. and Milan D. Smith, Jr.,
Circuit Judges, and Thomas F. Hogan, District Judge.*

Opinion by Judge Hogan

---

*The Honorable Thomas F. Hogan, Senior United States District Judge
for the District of Columbia, sitting by designation.

20043

**COUNSEL**

Joren Lyons, Asian Law Caucus, San Francisco, California, for the petitioner.

James A. Hunolt and Jessica E. Sherman, Department of Justice, Washington, D.C., for the respondent.

**OPINION**

HOGAN, District Judge:

Petitioner Su Hwa She ("Petitioner" or "She") seeks review of an order of the Board of Immigration Appeals ("BIA") dismissing her appeal from an Immigration Judge's ("IJ's") denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Upon due consideration, we grant the petition for review in part, deny it in part, and remand for further proceedings consistent with this opinion.

**I**

Su Hwa She was born in Burma,[1] where she and other members of her family were allegedly persecuted by ethnic Burmese officials from the mid-1960s until 1981, when she traveled to Hong Kong. She entered Taiwan shortly thereafter,

---

[1]Since 1989, Burma has been known officially as the Union of Myanmar. The agency decisions, like She's passport, refer to Burma, as do we. *Cf. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 366 n.1 (2000).

at the age of thirty-seven. She stayed with a family friend there and her name was put on a household register that was used to help her obtain a Taiwanese passport. (Br. at 6.) She remained in Taiwan for some eighteen months, ultimately gaining recognition as a citizen of the Republic of China (i.e., Taiwan). On May 28, 1983, She entered the United States on a visitor's visa with a 1985 expiration date. A.R. 78. She overstayed her visa and, several years after entering the United States, filed an asylum petition in Los Angeles. She also applied for withholding of removal to Burma and relief under CAT.[2] *Id.* Her asylum petition was referred to the Immigration Court in 2003 after an asylum officer opined that She's treatment in Burma did not amount to persecution and that she had firmly resettled in a third country before entering the United States. The record indicates that She repeatedly renewed her Taiwanese passport for over twenty years, but remained in the United States since her entry, never returning to Taiwan or Burma.

The Immigration Court designated Burma, Taiwan, and the People's Republic of China for purposes of removal. A.R. 58. The IJ thereafter heard argument along with She's testimony, including testimony about her time in Taiwan. The IJ's decision notes that

> [in Taiwan] she lived with family friends or people who put her on their family list. And by being placed on their family list, or what is commonly known as the household registration, she was able to get a passport. The respondent testified that she was not related to the people who befriended her by blood or in any manner. But it seems to reason if the respondent would pretend to be a member of that family it's quite likely she might embellish other facts as well.

---

[2]The timeliness of She's asylum application is not contested here.

(A.R. 51-52.) Nonetheless, the IJ continued: "The Court in this case makes no comment on her credibility as yet. But suffice it to say that the respondent's claim of asylum as to Burma is moot and she can return to Taiwan as she was a citizen of Taiwan." (A.R. 52.) The IJ therefore pretermitted her applications, noting that "[She] has a country to which she can return, and . . . all that is necessary is that [DHS] establish that there is a country that she could reside [in]." (*Id.*) Notwithstanding the fact that the IJ's decision does not mention the term "firm resettlement," the BIA affirmed the Immigration Court's decision without argument, stating: "We agree with the Immigration Judge that the respondent is ineligible for asylum because she was firmly resettled in Taiwan prior to entering the United States. . . . If Taiwan refuses to provide valid travel documents allowing [She] to return there, she may seek reopening to assert claims as against return to Burma." (A.R. 2-3.)

## II

"Where the BIA adopts the findings and reasoning of the IJ, this court reviews the decision of the IJ as if it were that of the BIA." *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003). "We review questions of law, and the application of legal principles to facts, de novo." *Hoque v. Ashcroft*, 367 F.3d 1190, 1195 (9th Cir. 2004); *Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003) (noting that due process claims are reviewed de novo); *Mengstu v. Holder*, 560 F.3d 1055, 1058 (9th Cir. 2009). Factual findings, including a determination of firm resettlement, are reviewed for substantial evidence, and are overturned only where "any reasonable adjudicator would be compelled to conclude to the contrary." *Farah*, 348 F.3d at 1156; 8 U.S.C. § 1252(b)(4)(B) (defining the substantial evidence standard); *cf. INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (holding that an asylum eligibility determination "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' ") (quoting 8 U.S.C. § 1105a(a)(4) (1992)). But

we lack jurisdiction to review an IJ's resolution of certain disputed facts. *See* 8 U.S.C. § 1158(a)(3); *see also Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007) (per curiam) (finding jurisdiction only over questions of law or mixed questions of fact and law insofar as determinations within the scope of 8 U.S.C. § 1158(a)(2) are concerned).

### III

**[1]** Asylum may not be granted to an alien who the Attorney General determines to have "firmly resettled in another country prior to arriving in the United States." 8 U.S.C. § 1158(b)(2)(A)(vi) (2010); 8 C.F.R. § 208.13(c)(2)(i)(B) (2010). An alien is considered to be firmly resettled if, prior to arriving in the United States, she "entered another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 208.15 (2010). The definition of firm resettlement does not encompass an alien who can demonstrate that "his or her entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country." *Id.* at § 208.15(a). So far as we are aware, based on the parties' briefs, Department of Homeland Security ("DHS") regulations do not define "significant ties" or otherwise elaborate on the interpretation of this exception. "DHS bears the initial burden of showing that the government of the third country issued to the alien a formal offer of some type of official status permitting the alien to reside in that country indefinitely." *Maharaj*, 450 F.3d 961, 976 (9th Cir. 2006); *see also Ali v. Ashcroft*, 394 F.3d 780, 789-90 (9th Cir. 2005). If the government establishes firm resettlement, the burden shifts to the alien to show, by a preponderance of the evidence, "that the nature of his stay and ties was too tenuous . . . for [her] to be firmly resettled." *Maharaj*, 450 F.3d at 969, 976-77; *Cheo v. INS*, 162 F.3d 1227, 1229 (9th Cir. 1998) ("A duration of residence in a

third country sufficient to support an inference of permanent resettlement in the absence of evidence to the contrary shifts the burden of proving absence of firm resettlement to the applicant."); *see also* 8 C.F.R. § 208.13(c)(2)(ii) (2000); *Mussie v. INS*, 172 F.3d 329 (4th Cir. 1999). Firm resettlement does not preclude eligibility for withholding of removal. *Siong v. INS*, 376 F.3d 1030, 1040-41 (9th Cir. 2004).

## A

**[2]** She first argues that the BIA and IJ improperly concluded that she had firmly resettled in Taiwan because she fraudulently obtained her Taiwanese passport and household registration. She points to *Ali* for the proposition that a person unlawfully in a third country cannot be found to be firmly resettled there. 394 F.3d at 789. But She miscasts *Ali*, wherein the petitioner testified that "she never received an offer of permanent residence." *Id.* at 790. In *Ali*, a panel of this Court explained that "the fact that [Petitioner] Ali fortuitously evaded detection by the government while living illegally in Ethiopia does not allow for a finding that Ali was firmly resettled in Ethiopia. . . . *Absent some government dispensation*, an immigrant who surreptitiously enters a nation without its authorization cannot obtain official resident status . . . ." *Id.* at 790 (emphasis added) (citation and internal quotation marks omitted). Here, there has been some government dispensation: She's recognition as a national of Taiwan. She's argument that her status in Taiwan should be disregarded because it was fraudulently obtained is hence unfounded. She also argues that the BIA erred on the Taiwan resettlement question by ignoring her testimony before the Immigration Court, although that testimony must be accepted as true. More specifically, Petitioner argues that she satisfied the burden of establishing that she falls under an exception to firm resettlement definition. In support of this argument, Petitioner cites her testimony that (1) her entry into Taiwan was a necessary consequence of her flight from persecution, (2) she remained there only long enough to obtain a passport and arrange

onward travel, and (3) she did not establish significant ties in Taiwan.

For its part, the government emphasizes that She remained in Taiwan longer than the one year necessary to obtain a passport and arrange onward travel, pointing out that by staying an additional six months, she was able to obtain status as a Taiwanese national. Duration of residence is undoubtedly an important consideration in the firm resettlement analysis, *Cheo*, 162 F.3d at 1229-30, but it must be weighed against Petitioner's testimony that she remained just long enough to arrange travel to the United States. Absent from the record is any discussion of how She arranged onward travel or whether she could have prudently done so within six months of obtaining a passport. The government also attacks She's claim that she had no significant ties to Taiwan, emphasizing that She "was recognized as a national of Taiwan and was granted the protection of that country for two decades." (Gov't's Br. 22.)

**B**

**[3]** Due process and this court's precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument. *See Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) ("The BIA abuses its discretion when it fails to provide a reasoned explanation for its actions."); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed factors involved and how they arrived at their conclusion." (internal quotation marks and alternation omitted)); *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 967-68 (9th Cir. 2006) (remanding for explanation of the BIA's reasoning); *Singh v. Gonzales*, 416 F.3d 1006, 1015 (9th Cir. 2005). It bears repeating that the IJ never entered a finding of firm resettlement, nor did he even mention the term. Although the IJ did not put it in so many words, the BIA surmised that the IJ had

properly made a finding of firm resettlement. Unfortunately, we lack the clairvoyance necessary to confidently infer the reasoning behind the BIA's conclusion.[3] Rather than countenance a decision that leaves us to speculate based on an incomplete analysis, we remand the case to the BIA for clarification.[4]

## C

[4] Absent an adverse credibility finding, the BIA is required to "presume the petitioner's testimony to be credible."[5] *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 662 (9th Cir. 2003) (citation omitted); *see also Navas v. INS*, 217 F.3d 646,

---

[3]The BIA apparently considered direct evidence of citizenship to be tantamount to a significant tie, such that She's evidentiary burden on that element of the firm resettlement exception was impossible to bear, regardless of her testimony. The BIA may have assumed that nationalization effectively denotes firm resettlement, *per se*. To be sure, direct evidence of nationalization is sufficient for the government to meet its initial burden. *See Maharaj,* 450 F.3d at 976. But it does not necessarily carry the day, and the law requires more than a cursory explanation on this point, particularly where a petitioner's credible testimony may refute the significance of nationalization. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1140-41 (9th Cir. 2004) (criticizing conclusory statements as insufficient and holding that the BIA must provide an explanation showing that it "heard, considered, and decided" the issue (internal quotation marks omitted)).

[4]Before the BIA, She argued that the IJ improperly applied a presumption of firm resettlement and improperly found that she had firmly resettled despite her credible testimony to the contrary. The BIA properly addressed She's appeal insofar as a *presumption* of firm resettlement goes, but it failed to address her argument that the IJ's finding must be reversed due to its inconsistency with her testimony that she remained in Taiwan only so long as necessary. The BIA's failure to fully address She's firm resettlement argument is an error that warrants remand. *See Sagaydak*, 405 F.3d at 1040 ("IJs and the BIA are not free to ignore arguments raised by [a party].").

[5]The REAL ID Act amendments to the Immigration and Nationality Act provide for a *rebuttable* presumption of credibility on appeal, 8 U.S.C. § 1158(b)(1)(B)(iii), but that provision does not apply retroactively, *see* Pub. L. 109-13 (May 11, 2005), and is therefore inapplicable here.

652 n.3 (9th Cir. 2000) ("Where the BIA does not make an explicit adverse credibility finding, we must assume that the applicant's factual contentions are true."); *Prasad v. INS*, 101 F.3d 614, 616 (9th Cir. 1996); *cf. Aguilera-Cota v. INS*, 914 F.2d 1375, 1383 (9th Cir. 1990) ("The mere statement that a petitioner is 'not entirely credible' is not enough."). Additionally, the BIA may not simply treat inconsistencies between the IJ's findings and She's testimony to be tantamount to an explicit adverse credibility finding. *Mendoza Manimbao,* 329 F.3d at 662 (concluding that the BIA violated petitioner's right to due process by "implying" an adverse credibility finding on review "without either remanding for a legally sufficient determination or otherwise affording him notice and an opportunity to respond"). Yet by disregarding She's testimony, which directly contradicts a finding of firm resettlement based on the exception set forth at 8 C.F.R. § 208.15(a), the BIA effectively did just that.[6] On remand, unless the BIA bases its determination on grounds which respect and recognize Petitioner's testimony as credible, due process requires that she receive a hearing.

[5] In sum, we agree that the government met its initial burden of showing firm resettlement and we accept that the IJ's decision describes a finding of resettlement, but we do not agree that the IJ adequately described a finding of *firm* resettlement. Neither the IJ nor the BIA explained why She fell short of carrying her burden of showing that she meets an exception to the definition. Taking her testimony as credible, She may be able to carry that burden. We accordingly hold that the BIA's decision affirming the dismissal of She's asylum petition based on a firm resettlement determination is not supported by substantial evidence. Because the BIA's deci-

---

[6]Although the presumption of credible testimony applies to factual assertions, not legal conclusions, the BIA could have credited She's testimony. Despite the presumption that the BIA considered the evidence before it, *see Larita-Martinez v. INS*, 220 F.3d 1092, 1095-96 (9th Cir. 2000), the record reveals that it failed to do so.

sion lacks a proper explanation of its firm resettlement finding and improperly implies an adverse credibility finding, we grant the petition, and remand for clarification or further factual development regarding She's claim that she never firmly resettled in Taiwan. *See generally INS v. Ventura*, 537 U.S. 12, 16-17 (2002); *Mendoza Manimbao*, 329 F.3d at 662.

## IV

**[6]** The IJ granted DHS's motion to pretermit She's applications for asylum, withholding of removal and CAT relief based on the order of removal to Taiwan. A.R. 52. She claims that the BIA erred in countenancing the IJ's refusal to consider her application for withholding of removal to Burma, such that she was denied a full and fair hearing in violation of the Fifth Amendment's Due Process Clause. Pet'r's Br. 7-8. According to She, her ability to seek reopening of proceedings in the event that Taiwan refuses to admit her is inadequate, apparently because there is no guarantee that the matter would be reopened in time to prevent her removal to Burma. Although She raises an understandable concern, her argument lacks merit. *See generally Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1227 (9th Cir. 2002) (remanding motion to reopen to the BIA). As the BIA explained, the applicant must "establish that his or her life or freedom would be threatened *in the proposed country of removal* . . . ." 8 C.F.R. § 1208.16(b) (emphasis added). Under the plain wording of 8 C.F.R. § 1208.16, an applicant is not entitled to adjudication of an application for withholding of removal to a country that nobody is trying to send them to. Here, the proposed country of removal is Taiwan, not Burma, despite the IJ's designation of both nations. To be sure, an eligible petitioner may apply for asylum and withholding of removal to countries designated by an IJ pursuant to 8 C.F.R. § 1240.10(f). *See* 8 C.F.R. § 1240.11(c) (2010). It follows that a failure to provide notice and, upon request, stay removal or reopen the case for adjudication of She's applications as to Burma would constitute a due process violation *if* Burma becomes the proposed country

of removal (as opposed to an alternative country of removal), but not otherwise.[7] *Compare* 8 C.F.R. § 1240.10(f) (referring to "the country of removal" and "alternative countries of removal") *with* 8 C.F.R. § 1208.16(b) (referring to "the proposed country of removal"). We therefore conclude that the BIA properly upheld the IJ's decision to pretermit She's applications for withholding of removal and CAT relief.

**V**

For the reasons stated herein, it is hereby ORDERED that the petition for review of the BIA decision is GRANTED IN PART, DENIED IN PART, and REMANDED for proceedings consistent with this opinion.

Each party shall bear its own costs on appeal.

**PETITION GRANTED IN PART, DENIED IN PART, and REMANDED.**

---

[7]She is concerned that she will not have an opportunity for a full hearing if Taiwan denies her entry and DHS thereafter sends her to Burma before the BIA (or Immigration Court) acts on a motion to reopen proceedings or a motion to stay removal. She shows no basis for this concern other than the absence of a rule that specifically requires DHS to facilitate an automatic stay of removal in that circumstance. She's proposed solution to this alleged loophole would allow petitioners to waste time by adjudicating applications regardless of the proposed nation of removal. The IJ's treatment of the matter as moot, or, more properly, unripe, is therefore not only permissible, but more sensible.