# Matter of D-X- & Y-Z-, Respondents

*Decided January 6, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  A facially valid permit to reside in a third country constitutes prima facie evidence of an offer of firm resettlement pursuant to section 208(b)(2)(A)(vi) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(2)(A)(vi) (2006), even if the permit was fraudulently obtained.

(2)  Where an asylum applicant who has resettled in a third country travels to the United States or the country of claimed persecution and then returns to the country of resettlement, he or she has not remained in that country "only as long as was necessary to arrange onward travel" for purposes of establishing an exception to firm resettlement pursuant to 8 C.F.R. § 1208.15(a) (2011).

FOR RESPONDENTS:  Anders L. Johnson, Esquire, San Francisco, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Cara D. Cutler, Assistant Chief Counsel

BEFORE:  Board Panel:  MALPHRUS, MULLANE, and CREPPY, Board Members.

MALPHRUS, Board Member:

In a decision dated May 25, 2006, an Immigration Judge found the respondents removable and granted the female respondent's asylum application from China.  The Immigration Judge found the male respondent ineligible for asylum because of his firm resettlement in Belize, ordered him removed from the United States to Belize, and granted him withholding of removal to China.  The Department of Homeland Security ("DHS") has appealed from the Immigration Judge's grant of asylum to the female respondent.  The male respondent has appealed from the Immigration Judge's denial of his asylum application.  The DHS's appeal will be sustained, the male respondent's appeal will be dismissed, and the record will be remanded to the Immigration Judge.

We review the findings of fact made by the Immigration Judge to determine whether they are "clearly erroneous."  8 C.F.R. § 1003.1(d)(3)(i) (2011); *see also Matter of A-S-B-*, 24 I&N Dec. 493 (BIA 2008).  We review de novo all questions of law, discretion, and judgment, including the question whether

the parties have met the relevant burden of proof.  8 C.F.R. § 1003.1(d)(3)(ii); *see also Matter of H-L-H- & Z-Y-Z-*, 25 I&N Dec. 209, 212-13 (BIA 2010). The DHS does not contest the Immigration Judge's finding that both respondents were credible witnesses, and we find no clear error in that determination.    We review de novo the question whether the facts presented by the respondents support a determination of firm resettlement. *Matter of A-G-G-*, 25 I&N Dec. 486, 488 (BIA 2011).

The Immigration Judge concluded that the female respondent had not been firmly resettled in Belize.  *See* section 208(b)(2)(A)(vi) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(2)(A)(vi) (2006); 8 C.F.R. § 1208.15 (2011).   The female respondent had a Permit to Reside in Belize, which the Immigration Judge considered to be an important indication of firm resettlement.  However, as the Immigration Judge noted, a presumption of firm resettlement can be rebutted by a showing that the asylum applicant remained in the third country "only as long as was necessary to arrange onward travel" and "did not establish significant ties in that country."  8 C.F.R. § 1208.15(a). According to the Immigration Judge, the female respondent was brought to Belize for the purpose of escaping China and continuing to the United States. The Immigration Judge found that the female respondent did not work or establish significant ties in Belize during the months that she resided there and therefore concluded that she was not firmly resettled in that country.

In *Matter of A-G-G-*, 25 I&N Dec. at 500-03, which was decided after the Immigration Judge's ruling in this case, we set forth a four-step framework for determinations involving firm resettlement as a mandatory bar to asylum. In the first step, the DHS bears the burden of presenting prima facie evidence of an offer of firm resettlement. *Id.* at 501.  To make such a showing, the DHS should first secure and produce direct evidence of governmental documents indicating an alien's ability to stay in a country indefinitely, which may include evidence of refugee status, a passport, a travel document, or other evidence indicative of permanent residence.  *Id.* at 501-02.

Here, the female respondent's permit constitutes prima facie evidence of an offer of firm resettlement.  The permit allowed her to live in Belize and to travel in and out of that country.  The female respondent was able to obtain a nonimmigrant visa to visit the United States by presenting her permit along with her Chinese passport, and she returned to Belize using these documents. The male respondent indicated that he was not told of any restrictions on the permit that would limit the holder's ability to work in Belize.

In the second step of our firm resettlement analysis, the asylum applicant can rebut the DHS's prima facie evidence of an offer of firm resettlement by showing by a preponderance of the evidence that such an offer has not, in fact, been made or that he or she would not qualify for it. *Matter of A-G-G-*, 25 I&N Dec. at 503.  The respondents have sought to rebut the presumption

of an offer of firm resettlement by asserting that the permits were obtained by fraud. The respondents paid a middleman for the permits, and they do not know whether they were issued by the Belize Government.

It is well settled that an alien is not faulted for using fraudulent documents to escape persecution and seek asylum in the United States. *See Matter of Pula*, 19 I&N Dec. 467, 474 (BIA 1987); *see also Singh v. Holder*, 638 F.3d 1264, 1271 (9th Cir. 2011); *Gulla v. Gonzales*, 498 F.3d 911, 917 (9th Cir. 2007). However, the problem in this case is not with the fraudulent nature of the documents per se. Rather, the respondents used fraudulently obtained documents that permitted them to firmly resettle in a third country where they were not at risk of persecution. As noted by the Immigration Judge, the permits are facially valid. Even if the respondents used some form of fraud or bribery through a middleman to obtain them, there has been no showing that they were not issued by the Belize Government. Furthermore, the female respondent used her permit to reenter Belize after visiting the United States.

Following the Immigration Judge's decision, the United States Court of Appeals for the Ninth Circuit rejected an asylum applicant's claim that her recognition as a national of Taiwan should be disregarded as evidence of firm resettlement because it was fraudulently obtained. *See Su Hwa She v. Holder*, 629 F.3d 958, 962-64 (9th Cir. 2010) (finding that the DHS met its initial burden of showing firm resettlement and that there was some "government dispensation" where the applicant was recognized as a national of Taiwan, even though that status was fraudulently obtained). Other circuits have similarly rejected claims that a fraudulently obtained immigration status should undercut a finding of firm resettlement. *See Firmansjah v. Gonzales*, 424 F.3d 598 (7th Cir. 2005) (holding that the fact that an asylum applicant obtained resident status in Singapore through her parents, who fraudulently obtained their permanent resident status, did not rebut evidence of firm resettlement where there was no evidence to indicate that Singapore officials ever attempted to revoke her parents' status); *Salazar v. Ashcroft*, 359 F.3d 45, 51 (1st Cir. 2004) (finding that the facial validity of a Venezuelan residence stamp was sufficient to create a presumption of firm resettlement, despite the asylum applicant's testimony that he paid an unidentified person to obtain the stamp, where no evidence was produced that it was not valid or that irregularities would result in its eventual invalidation by the Venezuelan Government).

More generally, we note that aliens who have obtained an immigration status by fraud should not be permitted to disavow that status in order to establish eligibility for another type of relief. *Cf. Matter of Ayala*, 22 I&N Dec. 398 (BIA 1998) (rejecting an alien's claim that he was eligible for a waiver because he was not "lawfully admitted" for permanent residence on account of his concealed fraudulent criminal activity at the time of his admission). Accordingly, for these reasons, we hold that the respondents'

claim of fraud in obtaining permits to reside in Belize does not rebut the DHS's prima facie evidence of firm resettlement in that country.

In the third step of our firm resettlement analysis, we consider the totality of the evidence presented by the parties to determine whether the alien has rebutted the DHS's evidence of an offer of firm resettlement. As we stated in *Matter of A-G-G-*, 25 I&N Dec. at 501, our analysis of firm resettlement "focuses exclusively on the existence of an offer." But we also consider indirect evidence that an alien is able to permanently reside in the country, such as the country's residence laws; the length of the alien's stay in the third country; the alien's intent; family ties and business or property connections; social and economic ties; receipt of government benefits or assistance; and whether the alien had legal rights, such as the right to work and enter and exit the country. *Id.* at 502.

Here, neither the female respondent's relatively short residence in Belize, nor her lack of employment in that country rebuts the DHS's evidence, which consists of a facially valid residence permit. She did not work, but she made no claim or showing that it was because she was ineligible to, and her husband did work. Further, her claim that she obtained the permit for the purpose of enabling her to transit through Belize to seek asylum in the United States is undercut by the fact that she traveled to the United States and voluntarily returned to Belize.

In the final step of the analysis, an asylum applicant has the burden to establish by a preponderance of the evidence that an exception to firm resettlement applies. *Matter of A-G-G-*, 25 I&N Dec. at 503; *see also* 8 C.F.R. § 1208.15. One exception is that the applicant's entry into the country "was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country." 8 C.F.R. § 1208.15(a). We agree with the DHS that the female respondent did not establish the applicability of this exception because she did not remain in Belize only as long as it was necessary to arrange onward travel. After receiving her permit, she traveled to the United States and then voluntarily returned to Belize. *See Vang v. INS*, 146 F.3d 1114, 1115-17 (9th Cir. 1998) (finding firm resettlement, in part because the alien used valid travel documents to travel abroad and return to France, and rejecting the alien's argument that the expiration of his documents after he entered the United States should affect the disposition of his asylum claim).

The other exception is that the applicant must establish that the conditions of her residence were "so substantially and consciously restricted" by the authority of the government that she was not, in fact, resettled. 8 C.F.R. § 1208.15(b). The female respondent did not establish this exception. In fact, she presented no evidence of restrictions on her residence in Belize, and there

is no indication that she would have had any difficulty residing there indefinitely. She did not claim to have faced any harassment, discrimination, or persecution in Belize. *Cf. Andriasian v. INS*, 180 F.3d 1033, 1043 (9th Cir. 1999) (finding no firm resettlement where the asylum applicant's stay was disrupted by harassment, discrimination, and threats to his physical safety, including a death threat, in the third country to which he had fled before going to the United States). Accordingly, we find that the female respondent was firmly resettled in Belize and that she is subject to the mandatory bar to asylum in section 208(b)(2)(A)(vi) of the Act.

The male respondent was also firmly resettled in Belize prior to coming to the United States. He, too, had a permit that allowed him to reside in Belize, and he acknowledged that he was not aware of any restrictions placed on his residence. He admitted that he did not seek any other legal status for himself in Belize, through asylum or otherwise, and there is no claim that his wife did either. For the same reasons as those stated regarding the female respondent, we find that the male respondent's possession of a facially valid permit indicates that he was firmly resettled, even if the permit was fraudulently obtained. *See Su Hwa She v. Holder*, 629 F.3d at 962.

Further, like the female respondent, the male respondent did not meet his burden of rebutting the presumption pursuant to 8 C.F.R. § 1208.15(a) because he did not establish that he remained in Belize only as long as was necessary to arrange onward travel. After receiving his permit, the male respondent went to China to marry his wife and then returned to Belize, and he finally entered the United States 9 months after receiving his permit. He has not produced evidence that he could not have traveled to the United States sooner. *See Su Hwa She v. Holder*, 629 F.3d at 963 ("Absent from the record is any discussion of how She arranged onward travel or whether she could have prudently done so within six months of obtaining a passport."). The female respondent had traveled to the United States a month earlier for a visit, and the male respondent did not establish that he could not have traveled with her at that time or even earlier.

Also, the male respondent, who worked in Belize, did not introduce evidence to establish that the conditions of his residence were "so substantially and consciously restricted" by the authority of the Belize Government that he was not, in fact, resettled. 8 C.F.R. § 1208.15(b). We therefore agree with the Immigration Judge that the male respondent was firmly resettled pursuant to section 208(b)(2)(A)(vi) of the Act.

It is a well-established concept that an alien who has firmly resettled in another country prior to coming to the United States is not eligible for asylum. *Matter of A-G-G-*, 25 I&N Dec. at 489-94 (outlining the history of the firm resettlement bar). "[T]he core regulatory purpose of asylum . . . is 'not to provide [applicants] with a broader choice of safe homelands,' but rather,

to 'protect [refugees] with nowhere else to turn.'" *Tchitchui v. Holder*, 657 F.3d 132, 137 (2d Cir. 2011) (quoting *Sall v. Gonzales*, 437 F.3d 229, 233 (2d Cir. 2006)). For the reasons discussed above, we conclude that the respondents obtained firm resettlement in Belize and are thus now ineligible for asylum in the United States. Accordingly, the DHS's appeal will be sustained and the male respondent's appeal will be dismissed.

Although a mandatory bar to asylum applies to the respondents, firm resettlement does not preclude eligibility for withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3) (2006). *Su Hwa She v. Holder*, 629 F.3d at 962. The Immigration Judge granted the male respondent's request for withholding of removal from China, and the DHS did not appeal that ruling. The record will be remanded to the Immigration Judge to consider the female respondent's request for withholding of removal from China under section 241(b)(3) of the Act.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The appeal of the male respondent is dismissed.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision with respect to the female respondent.