NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0296n.06

No. 23-3721

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 10, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| SABIN KAHAMBA SABWA, | ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW |
| v. | ) ) | OF A FINAL ORDER OF THE BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) ) | APPEALS |
| Respondent. | ) | OPINION |
| | ) ) | |

Before: BOGGS, COOK, and NALBANDIAN, Circuit Judges.

BOGGS, Circuit Judge. Sabin Kahamba Sabwa, a native and citizen of the Democratic Republic of the Congo ("DRC") and permanent resident of South Africa, seeks review of a final order of the Board of Immigration Appeals ("BIA") denying his applications for asylum and withholding of removal to South Africa. We have jurisdiction pursuant to 8 U.S.C. § 1252.

I

While living in the DRC, Sabwa became involved with his local religious communities. He joined the Viens et Vois Church in 1997 and then the New City of David Church in 2001. In 2003, two years after Joseph Kabila became DRC President, Sabwa's church began to advocate against Kabila and the Congolese government. On August 6, 2004, Sabwa was arrested by agents of the Agence Nationale de Renseignements (the DRC's national intelligence agency), who beat, whipped, and raped him. After this detention and torture, Sabwa fled to South Africa. He arrived in June 2005 and, two years later, received refugee status. Eleven years after that, in 2018, South

Africa granted Sabwa and his wife permanent residence. Sabwa and his wife have two children born in South Africa, one with refugee status and the other with no status. For much of his time in South Africa, Sabwa lived in Cape Town and ran a food business, a parking lot, and a car wash.

Sabwa's political activism did not stop once he reached South Africa. Starting in 2015, he participated in demonstrations by several South African groups advocating against the Congolese government. In July 2017, four South African police officers interrogated Sabwa about his involvement with these groups and accused him of plotting a coup against Kabila. Sabwa testified that, although the officers did not physically harm him, they threatened to arrest and deport him.

A few months later, in November 2017, Sabwa started a church in Cape Town. The church welcomed members from Zimbabwe, Malawi, and the DRC. On March 2, 2019, when Sabwa was preparing for the following day's religious service, seven individuals entered the church and yelled at Sabwa that he was not welcome in the community and "if you want to lead a Church you must go and do it in your country, the Congo, not here in South Africa." Sabwa reported the incident to the local police, but the group returned the following Saturday "with a mob." According to Sabwa, the leader ordered the mob to kill Sabwa because he was "a foreigner who comes to steal our jobs and take advantage of our people." The mob beat Sabwa, but he escaped with the help of a friend, who is a native South African and convinced Sabwa to report the incident to the police. Sabwa testified, however, that the police officer investigating the incident called him a "foreigner" in a South African native language and seemed to side with the mob. Sabwa left for the United States in May 2019 but was unable to arrange transit for his wife and children, who remained in South Africa with a friend.

In September 2019, Sabwa filed his applications for asylum and for withholding of removal. In May 2020, the U.S. Department of Homeland Security charged Sabwa with

removability under the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(1)(B), 1231(b)(3)(A). Before the Immigration Judge ("IJ"), Sabwa conceded the charge of removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The IJ denied Sabwa's application for asylum from South Africa because South Africa is not his country of nationality and he is not stateless. The IJ also denied his application for asylum from the DRC, finding that Sabwa had firmly resettled in South Africa. The IJ next concluded that Sabwa had not shown that he suffered past persecution or would suffer future persecution in South Africa. Accordingly, the IJ denied his applications for withholding of removal to South Africa and for deferral of removal to South Africa under the CAT. But the IJ determined that Sabwa had suffered past persecution in the DRC and granted his application for withholding of removal to the DRC.

The BIA affirmed, relying on the same grounds as the IJ. Sabwa timely appealed. He argues that the agency erred in finding that he firmly resettled in South Africa, in finding that he did not experience past persecution in South Africa, and in denying his motion to remand for consideration of new evidence.

II

A noncitizen[1] is ineligible for asylum if he has "firmly resettled in another country prior to arriving in the United States." 8 U.S.C. § 1158(b)(2)(A)(vi). A person is "firmly resettled" if he has "entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 1208.15

---

[1] Like the Supreme Court, we "use[] the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)); *see also United States v. Palomar-Santiago*, 593 U.S. 321, 324 (2021) (unanimous); *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

(2020).[2]  The agency's determination[3] that an applicant is firmly resettled is a factual finding that must stand as long as it is supported by "reasonable, substantial, and probative evidence." *Hanna v. Holder*, 740 F.3d 379, 386 (6th Cir. 2014) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).  We cannot reverse the agency's decision "simply on the grounds that we would have decided the matter differently." *Kukalo v. Holder*, 744 F.3d 395, 400 (6th Cir. 2011).  Instead, we "must accept the agency's findings of fact as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Garland v. Ming Dai*, 593 U.S. 357, 373 (2021) (quoting 8 U.S.C. § 1252(b)(4)(B)).

The BIA resolves firm-resettlement cases using a four-step framework that "focuses exclusively on the existence of an offer" of firm resettlement.  *Matter of A-G-G-*, 25 I&N Dec. 486, 501 (BIA 2011).  First, the government "bears the burden of presenting prima facie evidence of an offer of firm resettlement." *Id.* at 502.  The respondent can then rebut the government's prima facie case "by showing by a preponderance of the evidence that such an offer has not, in fact, been made or that he or she would not qualify for it." *Id.* at 503.  In the third step, the IJ determines, by the totality of the circumstances, whether the applicant has rebutted the government's prima facie evidence. *Ibid.*  Fourth and finally, if the IJ finds that the applicant has firmly resettled, the applicant then bears the burden to establish that an exception to firm resettlement applies. *Ibid.*  Sabwa does not dispute that he has an offer of firm resettlement, so our only question here concerns the fourth step.  On that point, Sabwa invokes an exception that

---

[2] The Department of Homeland Security and the Department of Justice have amended this provision via the so-called Global Asylum Rule, 85 Fed. Reg. 80,274 (Dec. 11, 2020).  However, the Global Asylum Rule has been preliminarily enjoined, *see Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966, 969 (N.D. Cal. 2021), so the previous version of the regulation remains in effect unless the injunction is lifted or reversed.

[3] In considering a petition for review of a final decision of the BIA affirming the IJ's denial of asylum, we review both the BIA's order and the IJ's decision, to the extent the BIA has adopted it. *Zheng v. Lynch*, 819 F.3d 287, 293 (6th Cir. 2016).

allows a firmly resettled noncitizen to seek asylum if "the conditions of his residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he was not in fact resettled." 8 C.F.R. § 1208.15(b) (2020).

The agency determined that Sabwa had not met his burden to establish this exception, concluding that Sabwa had not adduced evidence showing that the government of South Africa "actively supports" mistreatment of non-nationals like Sabwa. For this proposition, the agency relied on *Matter of K-S-E-*, 27 I&N Dec. 818 (BIA 2020), which the Ninth Circuit has vacated and remanded. *See Sylvestre v. Garland*, No. 20-71316, 2021 WL 2453043, at *1 (9th Cir. June 9, 2021). Sabwa argues that this reliance on a vacated BIA decision demands remand.

We disagree. *Sylvestre* is not binding on us or, outside the Ninth Circuit, on the BIA. *See Mirditaj v. Ashcroft*, 116 F. App'x 733, 735 (6th Cir. 2004) ("While the BIA is required to follow court of appeals precedent within the geographical confines of the relevant circuit, the precedent of [another circuit] is not binding on the BIA in a case originating within the Sixth Circuit." (cleaned up)). We acknowledge that, after *Sylvestre*, the BIA, in an unpublished, single-member order, vacated *K-S-E-* and remanded it to the IJ for further fact finding. But BIA decisions bind the agency only when they are designated as precedential, and the unpublished BIA order vacating *K-S-E-* after *Sylvestre* is not precedential. *See* 8 C.F.R. § 1003.1(g), (i).

It is true, of course, that the consistent application of the same rules of law to all similarly situated persons is a fundamental principle of justice. *See, e.g.*, *Henry v. INS*, 74 F.3d 1, 6 (1st Cir. 1996); *Zhang v. Gonzales*, 452 F.3d 167, 173 (2d Cir. 2006); *Njuguna v. Ashcroft*, 374 F.3d 765, 771 n.4 (9th Cir. 2004). In line with this principle, we have concluded elsewhere that remand was warranted where the agency relied on a vacated BIA decision. *Zometa-Orellana v. Garland*, 19 F.4th 970, 979 (6th Cir. 2021); *Antonio v. Barr*, 959 F.3d 778, 790 n.3 (6th Cir. 2020). But not all

vacaturs are created equal. In *Antonio*, the agency relied on a 2014 BIA decision that was later abrogated by a 2018 BIA decision, which in turn was vacated as arbitrary and capricious by a federal court. This complicated "ladder of authority counsels for remand." *Antonio*, 959 F.3d at 799 (Boggs, J., concurring in the judgment). But no such ladder exists here. *Sylvestre* and the BIA's subsequent vacatur are simple voluntary remands to resolve factual issues. *See Sylvestre*, 2021 WL 2453043, at *1 (granting government's unopposed motion to remand for further consideration of petitioner's resettlement status); *Matter of K-S-E-*, AXXX-XXX-477, at *1 (BIA Dec. Mar. 11, 2022) (remanding to IJ for further consideration given BIA's "limited fact-finding ability"). They did not abrogate *K-S-E-*'s statement of the restriction exception to the firm-resettlement bar.

In addition, the requirement for an applicant to show that the government of the country in which he is firmly resettled "actively supports" his mistreatment appears to be a necessary conclusion from the text of the relevant regulation, which provides an exception to the firm-resettlement bar where an applicant's conditions of residence are "substantially and consciously restricted by the authority of the country of refuge." 8 C.F.R. § 1208.15(b) (2020). It is hard to see how a government could "consciously restrict[]" a person's residence without, as *K-S-E-* put it, "actively support[ing]" his mistreatment. *K-S-E-*, 27 I&N Dec. at 822. Without active support, any restriction would not, in fact, be "conscious." *See, e.g.*, *Aden v. Wilkinson*, 989 F.3d 1073, 1080 (9th Cir. 2021) ("[A] restriction is 'conscious[]' if the persecutors acted knowingly."); *Damus v. Garland*, No. 21-4125, 2023 WL 34242, at *6 (6th Cir. Jan. 4, 2023) (requiring petitioner to identity evidence that "the *government* (in contrast to *private parties*) engaged in the discriminatory or criminal acts—as the regulation requires").

In response, Sabwa argues that the agency failed to recognize that "evidence of 'harassment, discrimination, or persecution' may indicate that an applicant would have difficulty residing in a third country indefinitely." Pet'r's Br. at 17 (quoting *Matter of D-X- & Y-Z-*, 25 I&N Dec. 664, 668 (BIA 2012)). Not so. The agency found that the South African government was taking steps to combat xenophobic harassment and discrimination and that it did not restrict any of Sabwa's "common basic human rights." Sabwa offered plenty of evidence of harassment and discrimination by private individuals in South Africa. But he failed to present evidence of harassment, discrimination, or persecution *by the South African government*.

Sabwa claims that *In re: F-A-*, AXXX-XXX-641 (BIA Dec. Mar. 29, 2017), an unpublished decision in which the BIA found that an Ethiopian national that firmly resettled in South Africa was eligible for asylum under the conscious-restriction exception, bears "striking similarities to the case at bar." Pet'r's Br. at 21. But the petitioner in *F-A-* offered much more evidence than Sabwa about the South African government's conscious actions to restrict his residence. In particular, the agency in *F-A-* found that "the police would not renew [the petitioner's] immigration paperwork unless he bribed them to do so." *F-A-*, at *2. Here, however, Sabwa has not offered evidence to suggest that the South African government attached any conditions, formal or informal, to its offer of permanent residence. To the contrary, Sabwa continuously resided in South Africa for 14 years, and he was able to leave and return to the country without issue. Thus, substantial evidence supports the agency's finding that the authorities in South Africa did not consciously restrict Sabwa's conditions of residence.

### III

Sabwa also challenges the BIA's decision affirming the IJ's finding that he did not suffer persecution in South Africa and is thus ineligible for withholding of removal to South Africa. As

with firm resettlement, we treat the agency's determination on withholding as a factual finding subject to the substantial-evidence standard of review. *Kamar v. Sessions*, 875 F.3d 811, 817–18 (6th Cir. 2017).

The government cannot remove a noncitizen to a country where his "life or freedom would be threatened" because of certain protected traits, including the noncitizen's "political opinion." 8 U.S.C. § 1231(b)(3)(A). The burden is on the noncitizen to show "a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). Not every instance of unfair, unjust, or unlawful treatment constitutes persecution. Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998).

The BIA determined that Sabwa "did not suffer harm rising to the level of past persecution." Sabwa argues that this statement requires remand because it is "unclear" whether it refers to Sabwa's experience in South Africa or the DRC and, if the latter, would be "patently untrue." Pet'r's Br. at 31. But the BIA's decision found that the government had waived any challenge to the IJ's finding that Sabwa suffered persecution in the DRC. So, this statement clearly concerns Sabwa's treatment in South Africa.

Still, Sabwa argues that this finding of no past persecution was conclusory and lacked adequate explanation. This argument fails. Both the BIA and IJ articulated the correct legal standards, accurately described Sabwa's arguments for why he believed that he suffered persecution in South Africa, and explained why those arguments lacked merit. We do not require the BIA to "exhaustively analyze every individual piece of evidence and each individual

subargument" or "write an exegesis on every contention." *Kilic v. Barr*, 965 F.3d 469, 474 (6th Cir. 2020) (internal quotation marks omitted).

Accordingly, we agree with the agency that the record establishes by substantial evidence that Sabwa did not suffer past persecution in South Africa. We have repeatedly held that a single incident of physical harm does not compel a finding of persecution. *See, e.g.*, *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007); *Pilica*, 388 F.3d at 954; *Damus*, 2023 WL 34242, at *6; *Lian v. Holder*, 414 F. App'x 790, 794–95 (6th Cir. 2011); *Gjokic v. Ashcroft*, 104 F. App'x 501, 505 (6th Cir. 2004). Other circuits agree. *See, e.g.*, *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003); *Prasad v. INS*, 47 F.3d 336, 339–40 (9th Cir. 1995); *Kapcia v. INS*, 944 F.2d 702, 707–08 (10th Cir. 1991).

Based on the record as a whole, the agency could reasonably conclude that Sabwa did not establish past persecution. Sabwa's testimony certainly establishes that his experience in South Africa has been unpleasant. But "even if the BIA treats an alien's evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof." *Ming Dai*, 593 U.S. at 371. Regarding Sabwa's 2017 interrogation at the hands of the police, the IJ found that the police did not physically harm Sabwa, released him after a few hours, and threatened him only with continued observation. Persecution generally requires something "more severe than . . . verbal threats." *Ortiz v. Garland*, 6 F.4th 685, 691 (6th Cir. 2021). And the IJ found that the 2019 incidents involving the mob at Sabwa's church were isolated incidents from which Sabwa did not suffer any significant physical harm that would amount to persecution. Sabwa does not explain how one interrogation by police and two isolated threats by private individuals require a reasonable factfinder to find that he suffered persecution in South Africa. In addition, he does not appear to challenge the agency's finding that he and his family could safely relocate within South Africa.

Accordingly, substantial evidence supports the agency's finding that Sabwa did not suffer past persecution.

IV

Finally, Sabwa challenges the BIA's denial of his motion to remand for consideration of new evidence. We review such denials for abuse of discretion. *Yousif v. Garland*, 53 F.4th 928, 936 (6th Cir. 2022). This is a high bar, and we find an abuse of discretion only where the BIA, "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005). Here, the BIA identified the new evidence that Sabwa sought to admit—a letter regarding his eldest daughter's rejection from a high school due to a lack of valid documentation of residential status—and explained why the new evidence did not require a remand to the IJ. The BIA determined that, even taking the letter into account, it would not change its finding that Sabwa was statutorily barred from asylum because he was firmly resettled. Thus, the BIA did not abuse its discretion by denying the motion to remand. *See Yousif*, 53 F.4th at 937.

V

For these reasons, the order of the BIA is **AFFIRMED.**