# Matter of K-S-E-, Respondent

*Decided April 10, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

For purposes of determining whether an alien is subject to the firm resettlement bar to asylum, a viable and available offer to apply for permanent residence in a country of refuge is not negated by the alien's unwillingness or reluctance to satisfy the terms for acceptance.

FOR RESPONDENT: Mikhail Izrailev, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Nicholas B. Lucic, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Acting Chairman; CREPPY, Board Member; GEMOETS, Temporary Board Member.

GEMOETS, Temporary Board Member:

In a decision dated August 23, 2017, an Immigration Judge found the respondent removable and denied his applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A) (2018).[1] The respondent has appealed from that decision. At our request, the respondent and the Department of Homeland Security ("DHS") have filed supplemental briefs. The appeal will be dismissed.

The Immigration Judge found that the respondent, a native and citizen of Haiti, was firmly resettled in Brazil prior to arriving in the United States and is therefore ineligible for asylum because he is subject to the mandatory bar in section 208(b)(2)(A)(vi) of the Act. The record contains a copy of a registry published by the Brazilian Government, which lists Haitian nationals, including the respondent, who were offered permanent resident

---

[1] The respondent does not meaningfully challenge the Immigration Judge's denial of his request for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988). We therefore deem this issue to be waived. *See, e.g.*, *Matter of A.J. Valdez and Z. Valdez*, 27 I&N Dec. 496, 496 n.1, 498 n.3 (BIA 2018) (noting that an issue addressed in an Immigration Judge's decision is waived when a party does not challenge it on appeal).

status in Brazil. The respondent testified that prior to departing Brazil sometime in 2016, he was aware of an offer of permanent residence in that country but had not "gone to pick up registry yet." As evidence of the offer of permanent residence, the DHS provided a translation of a joint communique from the Brazilian Ministry of Justice and the Ministry of Labor and Social Security authorizing a humanitarian program for permanent residence and explaining a description of the legal process for accepting an offer of permanent residence. The joint communique is attached to the registry list.

We apply a four-step framework for determining cases involving firm resettlement as a mandatory bar to asylum. *Matter of D-X- & Y-Z-*, 25 I&N Dec. 664, 665 (BIA 2012); *Matter of A-G-G-*, 25 I&N Dec. 486, 500–03 (BIA 2011). "In the first step, the DHS bears the burden of presenting prima facie evidence of an offer of firm resettlement." *Matter of D-X- & Y-Z-*, 25 I&N Dec. at 665. "To make such a showing, the DHS should first secure and produce direct evidence of governmental documents indicating an alien's ability to stay in a country indefinitely, which may include evidence of refugee status, a passport, a travel document, or other evidence indicative of permanent residence." *Id.*

Permanent resettlement exists where there is an available offer that realistically permits an individual's indefinite presence in the country. *See Matter of A-G-G-*, 25 I&N Dec. at 495 (discussing firm resettlement in terms of an offer by a country of refuge "of some type of permanent residence that would allow the alien to remain in that country indefinitely in some official status"). An alien who is firmly resettled in another country prior to his or her arrival in the United States "can no longer be considered to be fleeing persecution" for purposes of asylum. *Id.* at 490; *see also Matter of D-X- & Y-Z-*, 25 I&N Dec. at 668–69.

The DHS's evidence includes an offer of permanent residence by the Brazilian Government. The respondent does not dispute that he was aware of this offer, which provided for a series of steps that he could have pursued to obtain permanent residence, including, inter alia, registering with the police, submitting an application and identification documents, and paying a fee. However, he failed to pursue the required application process.

We agree with the DHS that these provisions set forth a series of ministerial acts that would not pose any significant obstacles to the respondent if he were to choose to accept the right to apply for permanent residence. *See Maharaj v. Gonzales*, 450 F.3d 961, 977 (9th Cir. 2006) ("In other words, an alien may have an 'offer' if the alien is *entitled* to permanent resettlement and all that remains in the process is for the alien to complete some ministerial act."). The respondent was not prevented from accepting the Brazilian Government's offer of permanent residence. Rather, he

testified that he did not accept the offer because of the cost and time involved and his fear of local crime if he stayed in Brazil. We conclude that the DHS presented prima facie evidence sufficient to demonstrate that an offer of firm resettlement was made available to the respondent. *See id.* ("The firm resettlement bar may apply if, instead of completing the process and accepting the offer of permanent resettlement to which the alien is entitled, the alien chooses to walk away.").

"In the second step of our firm resettlement analysis, the asylum applicant can rebut the DHS's prima facie evidence of an offer of firm resettlement by showing by a preponderance of the evidence that such an offer has not, in fact, been made or that he or she would not qualify for it." *Matter of D-X- & Y-Z-*, 25 I&N Dec. at 665. The respondent contends that the DHS did not present prima facie evidence of an offer of firm resettlement because, under a more complete picture of the legal requirements in Brazil, a "permanent" visa, such as the one he was offered, is merely an offer of temporary status. He claims that this status would expire after 5 years and that approval of an application for renewal would be contingent on the visa holder being employed at the time of application. The respondent therefore argues that even if an offer of residence was made available to him, the offer was not "permanent." Consequently, he contends that a finding of firm resettlement is precluded. However, since this feasible offer for "permanent residence" makes his status renewable, we do not agree that the identified contingencies to his continued presence render the offer insufficient to be an offer of firm resettlement.

Not only did the Brazilian Government have a program that would allow the respondent to apply for permanent status, but in his case, there was an actual offer to participate in the program. *See Camposeco-Montejo v. Ashcroft*, 384 F.3d 814, 818–20 (9th Cir. 2004) (distinguishing the significance of the right to apply for permanent residence from the ability to renew a temporary permit). The respondent had permission to work in Brazil and he was employed. His statement on appeal that he probably would not be employed at the time when he would need to renew his permanent residence is speculative and based on general country conditions that may not be applicable in the future. The requirement to maintain employment does not, therefore, prevent the status offered to the respondent from being "permanent."

The respondent also argues that the DHS did not meet its burden of proof to establish the relevant foreign law, because it did not provide a full picture of the legal requirements associated with applying for permanent residence in Brazil. *See Matter of Soleimani*, 20 I&N Dec. 99, 106 (BIA 1989) (stating that foreign law is a matter to be proven by the party seeking to rely on it), *superseded on other grounds by statute*, section 208(b)(2)(A)(vi) of the Act,

*as recognized in Diallo v. Ashcroft*, 381 F.3d 687, 692 & n.4 (7th Cir. 2004) (noting that prior to the statutory change that made firm resettlement a mandatory bar, "firm resettlement was but one factor that an immigration judge weighed in deciding whether to grant asylum").[2]  We disagree.

Contrary to the respondent's assertion, the evidence of foreign law that the DHS submitted is neither minimal nor incomplete.  The record contains ample substantive evidence of the relevant provisions of law and their effect on the question whether the respondent was firmly resettled in Brazil.  The evidence that the respondent claims was incorrectly omitted is merely secondary, relating to such matters as the procedure and timing of an application for renewal of status.  The DHS therefore met its burden in a manner consistent with *Matter of Soleimani*.

The third step of the firm resettlement analysis requires an Immigration Judge to "consider the totality of the evidence presented by the parties to determine whether an alien has rebutted the DHS's evidence of an offer of firm resettlement."  *Matter of A-G-G-*, 25 I&N Dec. at 503.  The respondent was aware that he had an offer of "permanent residence" in Brazil, and he satisfied its requirements, but he demonstrated his unwillingness to pursue the offer when it was made.  For purposes of determining whether an alien is subject to the firm resettlement bar to asylum, a viable and available offer to apply for permanent residence in a country of refuge is not negated by the alien's unwillingness or reluctance to satisfy the terms for acceptance.[3]  *See Matter of A-G-G-*, 25 I&N Dec. at 503 ("The regulations only require that an offer of firm resettlement was available, not that the alien accepted the offer. To hold otherwise would be contrary to the purpose of the firm resettlement bar, which is to limit refugee protection to those with nowhere else to turn." (citation omitted)).  Therefore, the respondent did not meaningfully rebut the DHS's evidence that an offer of firm resettlement was available to him.

Finally, in the fourth step, the burden shifts to the respondent "to establish that an exception to firm resettlement applies."  *Id.*  Although the respondent described various difficulties he faced in Brazil, he did not establish that the nature of his stay in that country was too tenuous or that the conditions imposed by the Brazilian Government were too restrictive for him to be considered firmly resettled.  *See* 8 C.F.R. § 1208.15(a)–(b) (2019) (allowing

---

[2]  The respondent questions whether *Matter of Soleimani* should be explicitly overruled. We need not address this issue but note that, after the enactment of section 208(b)(2)(A)(vi) of the Act, we refined our analytical framework to determine "firm resettlement" in *Matter of A-G-G-* and *Matter of D-X- & Y-Z-*.
[3]  An alien also cannot nullify an offer of firm resettlement by allowing his qualifications for permanent residence to lapse or by purposefully becoming ineligible.  *See, e.g.*, *Vang v. INS*, 146 F.3d 1114, 1117 (9th Cir. 1998) (rejecting an alien's assertion that he could not be firmly resettled after he allowed the travel documents issued by the country of refuge to expire).

an alien to rebut a finding of firm resettlement by showing that he did not stay long enough to "establish significant ties" or that the conditions of his residence in the country of refuge were "substantially and consciously restricted by the authority of the country").

We acknowledge the respondent's testimony that Haitians were treated poorly in Brazil, partly on account of their race, and that they were disproportionately targeted for robbery compared to native Brazilians. However, the evidence he presented of discrimination and criminal activity against Haitians in Brazil is limited in scope and does not establish that the Brazilian Government actively supports any mistreatment of Haitians that would constitute a conscious and substantial restriction of the respondent's residence. *See Matter of A-G-G-*, 25 I&N Dec. at 503; 8 C.F.R. § 1208.15(b).

Moreover, there is no evidence that the Brazilian Government restricted his right to travel or any other common, basic human right, with the exception of the right to vote, which is generally reserved to citizens. In sum, the record does not show that the conditions of the respondent's residence in Brazil were so substantially and consciously restricted by Brazilian authorities to establish that he was not, in fact, resettled. *See* 8 C.F.R. § 1208.15(b). Consequently, we agree with the Immigration Judge's conclusion that the statutory firm resettlement bar to asylum in section 208(b)(2)(A)(vi) of the Act applies in this case. *See Matter of D-X- & Y-Z-*, 25 I&N Dec. at 667–68.

We turn next to the Immigration Judge's alternative conclusion that even if the respondent is not barred, he did not meet his burden of establishing a well-founded fear of persecution in Haiti. The respondent claims to have fled Haiti because of mistreatment that he and other members of his family experienced as a result of their involvement with the Mochrenha political party, an affiliate of the Farmer Association for the Locality of Mazambie. The respondent identified his attackers as "bandits," who are collectively known as the Cannibal Army. The respondent explained that this group of bandits are known to work on behalf of the Mochrenha's rival, the AAA party. The Immigration Judge found the respondent to be credible but concluded that he did not meet his burden of establishing eligibility for asylum or withholding of removal.

We affirm the Immigration Judge's determination that the respondent has not demonstrated that he experienced or fears harm from the Haitian Government or from individuals the Government is unable or unwilling to control. The record reflects that the respondent's attackers are part of a disorganized group of bandits who engage in various criminal endeavors. While the Immigration Judge acknowledged that the bandits may have had political motivations, he also found that they were private individuals who were not affiliated with the Government. On this record, we cannot say

that the Immigration Judge's determination that the attackers are private individuals is clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2019).

Since the respondent fears private actors, he must establish that the Government is unable or unwilling to control them. *See Matter of A-B-*, 27 I&N Dec. 316, 337–38 (A.G. 2018) (explaining that to establish eligibility for asylum or withholding of removal, an applicant must show that the source of the claimed persecution is either the government or persons the government is unable or unwilling to control); *see also Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc); *Barrios v. Holder*, 581 F.3d 849, 854 (9th Cir. 2009).

We are not persuaded that the Immigration Judge clearly erred in making findings of fact regarding the autonomous police force's ability and willingness to control these private actors. While we recognize the respondent's assertion that he was reluctant to report a sexual assault because of potential stigmatization, the record does not demonstrate that Haitian laws or customs effectively deprive someone in his position of the Government's protection or that reporting the incident would have been futile or subjected the respondent to further abuse. *Cf. Bringas-Rodriguez*, 850 F.3d at 1073–76 (concluding that societal, legal, and cultural restraints towards homosexuality necessarily deprived the applicant of the protection of the Mexican Government).

On appeal, the respondent relies on a portion of the background evidence relating to sexual and gender-based violence. *See* Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, Haiti *Country Reports on Human Rights Practices for 2016* § 6, at 21–23, https://www.state.gov/wp-content/uploads/2019/01/Haiti-1.pdf. This information, found under the heading "Women," reflects that segments of Haitian society retain antiquated views regarding the rights and roles of women in society leading to societal tolerance of certain abuses towards women. This is not indicative of cultural, societal, or legal constraints that would make reporting the harm the respondent experienced futile or dangerous.

Finally, we are not persuaded that the Immigration Judge erred in giving little weight to the documentary evidence reflecting that the respondent reported the incident resulting in his cousin's death to the authorities. As the Immigration Judge properly determined, the document is inconsistent with the respondent's own testimony that he never reported any of the problems he had experienced.

Moreover, the document does not demonstrate, as the respondent asserts, that "nothing was done to address this murder." To the contrary, it states that the respondent reported the incident and that the authorities responded by investigating. The fact that limited information or resources mired an investigation does not establish the unwillingness or inability of the Haitian

Government to protect a private citizen. *Cf. Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) (discussing that insufficient resources do not in themselves negate government action to prevent torturous conduct).

This document further reflects that the respondent was not able to provide information to assist in identifying the attackers, presumably because he was not present at the scene. The inability to effectively assist the authorities does not demonstrate that authorities were unable or unwilling to protect the respondent. *See Matter of A-B-*, 27 I&N Dec. at 337–38 ("There may be many reasons why a particular crime is not successfully investigated and prosecuted. Applicants must show not just that the crime has gone unpunished, but that the government is unwilling or unable to prevent it."); *accord Truong v. Holder*, 613 F.3d 938, 941 (9th Cir. 2010) (per curiam) ("Without more, we are reluctant to infer government complicity or indifference from the mere fact that [the] police were unable to locate the [applicants'] unknown assailants.").

Considering the record in its entirety, we affirm the Immigration Judge's denial of asylum and withholding of removal based on his determination that the respondent has not demonstrated that he experienced or fears harm from the Haitian Government or from individuals the Government is unable or unwilling to control. *See* 8 C.F.R. §§ 1208.13(a), 1208.16(b) (2019). Given our disposition, we need not reach the respondent's remaining contentions. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $799 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2019).