**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

AVRINDER SINGH; HARJINDER
SINGH; EKAM PREET KAUR;
ANMOLPREET SINGH,

     Petitioners,

v.

JAMES R. McHENRY III, Acting United
States Attorney General,*

     Respondent.

No. 24-9514
(Petition for Review)

_____

**ORDER AND JUDGMENT**\*\*
_____

Before **TYMKOVICH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Avrindar Singh, with his wife and minor children, petitions for review of a

final order of removal issued by the Board of Immigration Appeals (Board or BIA).

We have jurisdiction under 8 U.S.C. § 1252 and deny their petition.

_____

    \* On January 20, 2025, James R. McHenry III became Acting Attorney General of
the United States. Consequently, his name has been substituted for Merrick B. Garland
as Respondent, per Fed. R. App. P. 43(c)(2).

    \*\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I. Background

### A.     Factual Background

Petitioners are citizens of India.  In 2007, Mr. Singh moved from India to Italy, with valid work authorization.  After he and his wife married in 2010, she also moved to Italy, and their two children were born there, in 2011 and 2013.  Petitioners resided in Italy until April 2021.  They rented an apartment and Mr. Singh had a driver's license and a car.  He was authorized to work, and Petitioners' legal status was renewable as long as Mr. Singh remained employed.  It was renewable every two years during his first ten years in Italy, then required renewal every five years.

Mr. Singh is Sikh.  While living in Italy, he met members of the Shiromani Akali Dal (Amritsar) political party, also known as SAD-A or the Mann party.  The Mann party supports pro-Sikh policies including creation of an independent Sikh state.  While in Italy, Mr. Singh attended Mann party meetings and donated money to support party causes.

In early 2021, Mr. Singh lost his job, and in April 2021 Petitioners returned to India.  Mr. Singh joined the Mann party in India and supported it by putting up posters and raising money.  While putting up posters in May 2021 he was approached by members of India's ruling party, the Bharatiya Janata Party (BJP).  They told him to stop putting up the posters, knocked him down, and started to beat him up.  They said he would be arrested if they saw him putting up posters again.  Mr. Singh reported this incident to the police, but they refused to register a complaint against the ruling BJP.  In a second incident the following month, Mr. Singh and his wife

2

were stopped by group of men while returning from a Mann party protest. One of the men carried a pistol and Mr. Singh recognized two of them from the prior incident. They told Mr. Singh they knew he supported the Mann party and accused him of advocating against the government, then beat him with sticks and threatened to shoot him. They also slapped his wife, tore her clothes, and threatened to rape her. They stopped when nearby farmers intervened.

After this incident, petitioners moved away from Mr. Singh's village to stay with his wife's family. First BJP members and then police officers visited Mr. Singh's father's house, looking for Mr. Singh. The police said they sought to arrest Mr. Singh for anti-government activity at a protest he had not attended. Petitioners moved further away, to Chandigarh. BJP members continued to make threats to Mr. Singh's father and ask about Mr. Singh's whereabouts.

Petitioners traveled back to Italy on September 9, 2021, entering using Mr. Singh's work authorization. After they arrived, Mr. Singh's brother, who lived in Italy, received threatening phone calls from an unknown person who said they knew about Mr. Singh's political activities, asked about his location, and threatened Mr. Singh's brother. Men also inquired about Mr. Singh at a grocery store in his home village. After a two-week Covid-19 quarantine in Italy, Petitioners traveled to Mexico on September 23, 2021, then entered the United States on October 5, 2021.

### B.    Administrative Proceedings

The Department of Homeland Security (DHS) charged Petitioners with being removable. Petitioners conceded removability but applied for asylum, withholding of

removal, and protection under the Convention Against Torture (CAT) based on Mr. Singh's fear that he would be harmed or killed in India based on his religion and support of the Mann party. An immigration judge (IJ) found Mr. Singh credible but denied relief. The BIA dismissed their appeal, upholding the IJ's determinations that: (1) Petitioners were ineligible for asylum because they had been firmly resettled in Italy; (2) Mr. Singh was ineligible for withholding of removal because he had not shown past persecution or a clear probability of future persecution; and (3) Mr. Singh was ineligible for relief under the CAT because he had not shown a likelihood he would be tortured if returned to India.

## II. Standard of Review

Because a three-member BIA panel issued a "full explanatory opinion," its decision "completely supercedes the IJ decision for purposes of our review." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006). We review the BIA's opinion and those portions of the IJ's decision the BIA adopted or incorporated. *See Sarr v. Gonzales*, 474 F.3d 783, 790–91 (10th Cir. 2007). "We consider any legal questions de novo, and we review the agency's findings of fact under the substantial evidence standard." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). The substantial evidence standard is "highly deferential" to the agency's factual determinations. *Nasrallah v. Barr*, 590 U.S. 573, 583 (2020). Such findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "[O]ur duty is to guarantee that factual

4

determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour*, 378 F.3d at 1150.

### III. Discussion

#### A.     Asylum

##### 1.     The Firm Resettlement Bar

A noncitizen who "was firmly resettled in another country prior to arriving in the United States" is ineligible for asylum. 8 U.S.C. § 1158(b)(2)(A)(vi). Under 8 C.F.R. § 1208.15 (2020), an applicant "is considered to be firmly resettled if, prior to arrival in the United States, he or she . . . received[] an offer of permanent resident status, citizenship, or some other type of permanent resettlement" in another country.[1] Thus, "[t]he firm resettlement bar generally mandates a denial of asylum if a third country in which an alien has resided offers him or her permanent resettlement before the alien enters the United States." *Elzour*, 378 F.3d at 1151.

The BIA determines whether an asylum applicant was firmly resettled using a sequential burden-shifting framework. *See Matumona v. Barr*, 945 F.3d 1294, 1301 (10th Cir. 2019) (citing *Matter of A-G-G-*, 25 I. & N. Dec. 486, 501–03 (BIA 2011)). First, DHS has the burden to present prima facie evidence showing the applicant

---

[1] In December 2020, DHS and the Department of Justice published a joint rule to amend § 1208.15, along with other regulations. *See* Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, 85 Fed. Reg. 80274, 80397 (Dec. 11, 2020). But implementation of that rule has been enjoined nationwide. *See Pangea Legal Servs. v. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966, 977 (N.D. Cal. 2021). We therefore cite and refer to the previous, 2020 version of § 1208.15.

received an offer of permanent resettlement. *See id.* If DHS makes that prima facie

case, the applicant then has the burden to show by a preponderance of the evidence

that there was *not* an offer of firm resettlement, or that he would not qualify for it.

*See id.* The BIA (or an IJ) then considers the totality of the evidence to decide if

the applicant has rebutted DHS's prima facie showing of firm resettlement.[2] *Matter*

*of A-G-G-*, 25 I. & N. Dec. at 503.

### 2.    The BIA Did Not Err By Relying on *Matter of K-S-E-*

Petitioners first argue the BIA erred by relying on *Matter of K-S-E-*, 27 I. & N.

Dec. 818 (BIA 2020), because the Ninth Circuit vacated that decision in *Sylvestre v.*

*Garland*, No. 20-71316, 2021 WL 2453043 (9th Cir. June 9, 2021) (unpublished)

(granting DHS's unopposed motion for remand), and the BIA then also granted

DHS's motion to remand to an IJ for further factfinding, vacating its prior decision.

The BIA relied on *Matter of K-S-E-* when finding Petitioners had not rebutted

the government's prima facie showing of firm resettlement. Specifically, it cited

*Matter of K-S-E-* for the proposition that "[t]he requirement to maintain employment

does not . . . prevent the status offered to [Mr. Singh] from being 'permanent[.]'"

R. vol. 1 at 4 (quoting *Matter of K-S-E-*, 27 I. & N. Dec. at 820). Petitioners argue

*Matter of K-S-E-* was no longer precedential and request a remand for the BIA "to

decide in the first instance, free of the vacated strictures of *K-S-E-*, whether a

---

[2] An applicant who has not rebutted the showing of firm resettlement then has
the burden to show an exception to the firm resettlement bar applies. *See Matumona,*
945 F.3d at 1301. But Petitioners do not argue any exception applies to them.

potentially renewable work visa, contingent on continued employment, constitutes an offer of firm resettlement."  Pet'rs' Opening Br. at 24.

Petitioners did not make this argument before the BIA and we usually do not address unexhausted arguments.  *See Miguel-Peña v. Garland*, 94 F.4th 1145, 1154 (10th Cir. 2024) ("[A]n alien must present the *same specific legal theory* to the BIA before he or she may advance it in court.  Presenting the same *conclusion* or *request for relief* to the BIA isn't enough." (internal quotation marks, brackets, and ellipsis omitted)), *cert. denied*, 2024 WL 4743083 (U.S. Nov. 12, 2024) (No. 24-12).

However, "issue exhaustion is . . . mandatory but subject to forfeiture and waiver." *Id.* at 1155.  Because the government has not raised Petitioners' failure to exhaust, we have discretion to reach this unexhausted argument.  *See id.* at 1158.  We elect to do so largely because the BIA reached and rejected Petitioners' argument when it denied their motion to reopen.[3]  So although that is not the decision we are reviewing, we are not "depriv[ing] the agency of an opportunity to consider the matter, make its ruling, and state the reasons for its action" in the first instance.  *Id.*

Although we take up Petitioners' unexhausted argument, it is unavailing.  Decisions the BIA designates as precedential "serve as precedents in all proceedings involving the same issue or issues."  8 C.F.R. § 1003.1(g)(2).  And regulations "require[e] that the Board follow its precedent."  *Galeano-Romero v. Barr*, 968 F.3d 1176, 1184 (10th Cir. 2020), *abrogated on other grounds by Wilkinson v. Garland*,

---

[3] Petitioners filed the BIA's decision denying their motion to reopen as a supplemental authority pursuant to Fed. R. App. P. 28(j).

601 U.S. 209 (2024).  Significantly, and as Petitioners acknowledge, the BIA is "not required to accept an adverse determination by one circuit court of appeals as binding throughout the United States."  *Matter of Anselmo*, 20 I. & N. Dec. 25, 31 (BIA 1989).  Rather, the BIA will "apply the law of the circuit in cases arising in that jurisdiction, but [is] not bound by a decision of a court of appeals in a different circuit."  *Matter of U. Singh*, 25 I. & N. Dec. 670, 672 (BIA 2012).  Therefore, even when one circuit has "vacated [a] BIA decision," because it concluded the BIA erred, that "does not affect the decision's precedential effect outside of [that circuit]." *Espinal-Andrades v. Holder*, 777 F.3d 163, 167 n.1 (4th Cir. 2015).  *Sylvestre* therefore did not change *Matter of K-S-E-*'s precedential effect outside of the Ninth Circuit.

Petitioners argue *Matter of K-S-E-* differs from a decision vacated by a court of appeals because after the Ninth Circuit remanded, the BIA also vacated its prior decision, remanding for further proceedings before an IJ.  They reason that *Matter of K-S-E-* was therefore no longer the final decision in the proceedings, and so could no longer be precedential.  We are unpersuaded.  Only selected BIA decisions are designated as precedential, and only decisions issued by a three judge panel may be selected.  8 C.F.R. § 1003.1(g)(3).  *Matter of K-S-E-* was so designated but the BIA order vacating it was issued by a single judge.  Moreover, neither the Ninth Circuit nor the BIA reached or abrogated the reasoning of *Matter of K-S-E-*; both only

8

granted DHS's own requests for remand.[4]  Nothing else reflects that the BIA or the

Attorney General meant to alter or withdraw the reasoning of *Matter of K-S-E-* or its

precedential designation.  And to the extent Petitioners' argument is based on a lack

of finality, we do not see how that distinguishes *Matter of K-S-E-* from decisions

reversed by a court of appeals, which are typically also remanded for further

proceedings before the BIA.  *See, e.g.*, *Uanreroro*, 443 F.3d at 1211; *Elzour*, 378

F.3d at 1154; *Sarr*, 474 F.3d at 796.  Because we see no indication the BIA meant to

withdraw the precedential status of *Matter of K-S-E-*, we see no reversible error in

the BIA's reliance on it in this case.

### 3.  The BIA's Firm Resettlement Finding Was Supported by Substantial Evidence

Having concluded the BIA did not err by relying on *Matter of K-S-E-*, we also

conclude its firm resettlement determination was supported by substantial evidence.[5]

Petitioners do not dispute there is prima facie evidence showing they were firmly

resettled but contest the BIA's determination that they did not rebut that showing.

---

[4] Even if the BIA's vacatur might show the *K-S-E-* decision was "modified or overruled by the Board," and therefore no longer "binding" under 8 C.F.R. § 1003.1(g)(1), our focus here is on whether it remained a "Precedent decision[]" applicable in other "proceedings involving the same issue" under § 1003.1(g)(2).

[5] It is unsettled whether we review the BIA's firm resettlement determination for substantial evidence or abuse of discretion.  *See Elzour*, 378 F.3d at 1150 n.9 (noting a prior case suggesting an abuse-of-discretion standard while stating that we "generally . . . review IJ and BIA factfinding for substantial evidence" and "most other circuits" apply that standard) (citing cases)).  We need not definitively resolve the issue because substantial evidence supports the BIA's decision and we also discern no abuse of discretion.  *See Elzour*, 378 F.3d at 1150 n.9 ("[M]aking a factual finding that is not supported by substantial record evidence is necessarily an abuse of discretion").

We conclude the BIA's finding was adequately supported. Petitioners re-entered Italy using Mr. Singh's existing work authorization. He testified that they then had 30 days to renew their "papers," and that he needed employment to do so. R. vol 1 at 104. But Petitioners left Italy less than 30 days later, as soon as they completed a Covid-19 quarantine. To meet their burden, they point only to the fact that Mr. Singh lost his job earlier in the year and his testimony that he looked for work but "[t]here was nothing available" in September. *Id.*; *see also* Pet'rs' Opening Br. at 20–21 & n.102. They cite no other evidence showing they sought to remain in Italy or maintain their status for Mr. Singh to seek work after they left quarantine. They therefore have not shown a preponderance of the evidence compelled the BIA to find they were not firmly resettled.

This is particularly true given the other evidence supporting the government's prima facie showing. Mr. Singh lived and worked in Italy for approximately fourteen years, renewed his work authorization repeatedly, rented an apartment, held a driver's license, and owned a car. Petitioners received money from the Italian government to support their Italian-born children, who attended school in Italy. They were able to enter and exit the country. Mr. Singh's brother lived in Italy, and Mr. Singh attended gurdwara (a Sikh place of worship) there. This evidence supports the BIAs finding, in the totality of the circumstances, that petitioners did not rebut the showing that they were firmly resettled in Italy. We see neither legal error nor a lack of substantial evidence in its determination that any "lapse in [Mr. Singh's] work authorization" did not "negate the offer that realistically permitted him indefinite

10

presence in [Italy]." R. vol. 1 at 4.[6] *See Elzour*, 378 F.3d at 1152 ("Refugees may not . . . receive asylum after having unilaterally rejected safe haven in other nations in which they established significant ties along the way.").

The cases cited in Petitioners' argument do not support their cause.[7] In *Elzour*, the IJ found the petitioner was firmly resettled only because Canada allowed him to work and to *apply* for asylum; we found those grounds inadequate, noting Canada had denied asylum and ordered him deported. *See* 378 F.3d at 1151–52. In *Camposeco-Montejo v. Ashcroft*, 384 F.3d 814, 819–20 (9th Cir. 2004), the IJ erroneously stated the applicant was allowed permanent residence, when in fact his status "d[id] not confer the right to apply for permanent residency." So far as the unpublished decision reveals, in *Masihi v. Holder*, 519 F. App'x 963, 964 (9th Cir. 2013) the IJ erred by finding the petitioner firmly resettled when she was "eligible to *apply* for a work permit" but had not received an offer of resettlement (emphasis added). These decisions do not support Petitioner's contention that an offer of resettlement that requires renewal and/or employment is therefore not permanent.

---

[6] The BIA described Mr. Singh's work authorization as "lapse[d]." R. vol. 1 at 4. His testimony indicated he had thirty days to renew it after re-entering Italy. Whether his status was best understood as "lapsed" (but renewable) or valid (but would expire unless renewed) our evaluation is the same. Petitioners had an offer to remain in Italy and have not shown they acted to accept it.

[7] To the extent Petitioners argue *Matter of K-S-E-* incorrectly interpreted § 1208.15 or was wrongly decided, the argument is not exhausted. Before the BIA, they argued *Matter of K-S-E-* was distinguishable but not that its reasoning was incorrect or inconsistent with the regulatory language. *See* R. vol. 1 at 16. Although the government does not raise exhaustion, we have discretion to require it, and we do so to avoid "depriv[ing] the agency of the opportunity to address [the] argumen[t] in the first instance." *Miguel-Peña*, 94 F.4th at 1158.

Moreover, these cases are unlike the facts here, where Petitioners received, and for years accepted, a renewable offer of residency but have not shown they took the steps required to maintain that status before the left Italy for the United States.

### B.    Withholding of Removal

"An applicant seeking withholding of removal must establish a clear probability of persecution in [his] country," based on a recognized ground. *Matumona*, 945 F.3d at 1304 (internal quotation marks omitted). The BIA found the two incidents of harm Petitioners described "did not establish harm rising to the level of past persecution." R. vol. 1 at 6. Petitioners do not challenge that finding, so no presumption of future persecution arises, and Mr. Singh had the burden to show it is more likely than not he would be persecuted in the future. *See Addo v. Barr*, 982 F.3d 1263, 1273 (10th Cir. 2020); *Elzour*, 378 F.3d at 1149.

The BIA found he had not met that burden, upholding the IJ's finding that he could safely relocate to another part of India. Its determination is supported by substantial evidence. Even where there is a presumption of future persecution, it is overcome if the applicant could avoid the threat by reasonably relocating within his country. *See Addo*, 982 F.3d at 1273; 8 C.F.R. § 208.16(b)(1)(i)(B) (2020).[8] As the BIA observed, Petitioners "were able to safely relocate from their home village twice . . . and remain unharmed in both locations until their departure for Italy." R. vol. 1

---

[8] We refer to the 2020 version of § 208.16 because, related to § 1208.15, adoption of later amendments has been delayed. *See supra* note 1; Security Bars and Processing; Delay of Effective Date, 89 Fed. Reg. 105386, 105387 & n.4 (Dec. 27, 2024) (delaying effective date until December 31, 2025).

at 6.  This is borne out by the evidence.  It is true that after Petitioners left Mr. Singh's village, BJP members and police inquired about him at his father's house, the police told his father they intended to arrest him, and an unknown caller threatened his brother in Italy.  But neither Mr. Singh nor any of his family members were further harmed, and he was not arrested.

The BIA also concluded Petitioners "have not presented evidence to show the individuals they fear would have any interest in pursuing them outside of their home village or that the BJP members would be able to find them."  *Id.*  While the evidence might allow differing conclusions about the alleged persecutors' *interest*s, we cannot say the BIA's finding was unsupported by substantial and probative evidence. Mr. Singh was not, in fact, pursued or harmed after he relocated and neither were his relatives.  The totality of the evidence would not compel any reasonable adjudicator to find it more likely than not Mr. Singh would be harmed upon return to India and could not avoid harm by relocating.  He therefore has not met his burden to show he is eligible for withholding of removal.

Petitioners argue two factual errors by the BIA require remand.  We disagree. First, they argue the BIA overlooked Mr. Singh's fear of being persecuted by the police.  The BIA reasoned, in part, that Petitioners had not shown that "BJP members would be able to find them elsewhere in India."  *Id.*  Mr. Singh argues he feared persecution by the police as well as the BJP, and that the police would have more ability to locate him.  But the two instances of past harm did not involve the police, and Mr. Singh has not cited any evidence that they have a particular capacity or

13

interest to locate him. After police came to his father's house in late June of 2021, stating they would arrest him, Mr. Singh remained in India for over two months, then left without incident. Even if Mr. Singh subjectively feared the police, the evidence did not compel the BIA to find a clear probability that they would harm him, or that he could not avoid such harm by relocating.

Second, Petitioners claim reversible error because the IJ cited evidence of an alliance between the BJP and a more moderate Sikh political party (Shiromani Akali Dal (Badal), or SAD-B), when finding Mr. Singh was unlikely to be persecuted. He argues he is actually a member of the Mann party, which "takes more radical positions," making it more likely he will face persecution. Opening Br. at 28. Mr. Singh argues the BIA perpetuated the IJ's error. But we review only those portions of the IJ's decision the BIA adopted. *See Sarr*, 474 F.3d at 791. And we "should not decide a petitioner's challenge to a BIA order on grounds that the agency did not rely upon or disclose in the record." *Miguel-Peña*, 94 F.4th at 1158. The BIA did not refer to the IJ's discussion of evidence connected to the SAD-B party. It rested its decision on finding Mr. Singh could safely relocate within India. That reasoning is not altered by the IJ's alleged error.

### C.    Convention Against Torture

To obtain protection under the CAT, Mr. Singh must show "it is more likely than not that he . . . would be tortured" if removed to India. *Sarr*, 474 F.3d at 788 (quoting C.F.R. § 1208.16(c)(2)). "To qualify as torture, actions must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or

14

other person acting in an official capacity.'" *Nasrallah*, 590 U.S. at 577 n.1 (quoting 8 C.F.R. § 1208.18(a)(1)).  The BIA upheld the IJ's findings that Mr. Singh's past experiences did not constitute torture and he had not shown a likelihood of future torture.  Mr. Singh argues the BIA erred based on the same two alleged errors addressed above, related to his party affiliation and fear of the police.  We remain unpersuaded.  Mr. Singh does not argue the past harm rose to the level of torture.  And as discussed above, he safely remained in India for over two months after police said they would arrest him.  The evidence did not compel the BIA to find it more likely than not that Mr. Singh would be tortured upon return to India.

## IV. Conclusion

Because Petitioners have not carried their burden to show they are eligible for any of the forms of relief requested, the petition for review is denied.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

15