# Matter of L-T-A-, Respondent

*Decided December 18, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Evidence that a respondent had a legal right to enter, live, work, and own property indefinitely in the country of proposed resettlement demonstrates that the respondent was offered "some other type of permanent resettlement" for purposes of the firm resettlement bar.

FOR THE RESPONDENT: Ilya Laksin, Esquire, New York, New York

BEFORE: Board Panel: MULLANE, CREPPY, and GOODWIN, Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

The respondent is a native and citizen of Nepal. In a decision issued on January 15, 2020, the Immigration Judge denied her application for asylum but granted her application for withholding of removal to Nepal. Sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018). The Immigration Judge determined that the respondent was statutorily ineligible for asylum because she firmly resettled in India. *See* INA § 208(b)(2)(A)(vi), 8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 1208.15 (2020). The respondent has appealed the denial of asylum.[1] She has also filed additional evidence on appeal, which we construe as a motion to remand. The appeal will be dismissed, and the motion to remand will be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent testified that while she was a student in Nepal in 2009, she received approximately five threats from Maoists because she refused to support them. In 2011, Maoists from the Young Communist League attacked the respondent while she organized a meeting in support of the Nepali Congress Party and beat her with wooden sticks. As a result, the respondent lost consciousness, spent a week in the hospital, and received stitches on her

---

[1] The respondent does not challenge any other aspects of the Immigration Judge's decision. The Department of Homeland Security has not appealed the Immigration Judge's grant of withholding of removal to Nepal.

head.  After the attack, the respondent fled to India, where she obtained employment as a hotel receptionist.  She lived in India for 5 years without incident.  While the respondent was in India, her uncle in Nepal was approached by Maoists who told him they would find the respondent in India and force her to join them.  The respondent subsequently left India for the United States.

The Immigration Judge concluded that the threats and harm the respondent suffered rose to the level of persecution and that her political opinion was at least one central reason for her persecution.  The Immigration Judge also found that the respondent established that, in 2011, the Nepali Government was unable or unwilling to control her attackers.  However, the Immigration Judge determined that the respondent had firmly resettled in India and was ineligible for asylum.  The Immigration Judge granted withholding of removal.

## II.  ANALYSIS

The sole issue in this case is whether the respondent firmly resettled in India.  In particular, we will consider whether the respondent was offered "some other type of permanent resettlement."  8 C.F.R. § 1208.15.  While we review the Immigration Judge's factual findings for clear error, we review de novo whether the facts support a determination of firm resettlement.  *Matter of A-G-G-*, 25 I&N Dec. 486, 488 (BIA 2011); 8 C.F.R. § 1003.1(d)(3)(i)–(ii) (2025).

### A.  Legal Background

An alien is ineligible for asylum if he or she "was firmly resettled in another country prior to arriving in the United States."  INA § 208(b)(2)(A)(vi), 8 U.S.C. § 1158(b)(2)(A)(vi).  The applicable Federal regulation set forth at 8 C.F.R. § 1208.15[2] defines firm resettlement as follows:

> An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an

---

[2]  This case is governed by the version of 8 C.F.R. § 1208.15 in place in 2020.  The regulation was amended by *Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review*, 85 Fed. Reg. 80274 (Dec. 11, 2020) (to be codified at 8 C.F.R. pts 208, 235, 1003, 1208, 1235).  However, the amended rule was enjoined.  *See Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966 (N.D. Cal. 2021).  The enjoined version of the firm resettlement regulation is meaningfully different from the 2020 version of the regulation.

offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he or she establishes:

    (a)  That his or her entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country; or

    (b) That the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled.  In making his or her determination, the asylum officer or immigration judge shall consider the conditions under which other residents of the country live; the type of housing, whether permanent or temporary, made available to the refugee; the types and extent of employment available to the refugee; and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation that includes a right of entry or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country.

In *Matter of A-G-G-*, 25 I&N Dec. at 501–03, the Board set forth a four-step framework for deciding cases involving firm resettlement.[3]  First, the Department of Homeland Security ("DHS") "bears the burden of presenting prima facie evidence of an offer of firm resettlement."  *Matter of A-G-G-*, 25 I&N Dec. at 501.  Prima facie evidence of an offer of firm resettlement may include both direct evidence of an offer and indirect evidence.  *See id*. at 501–02; *Sall v. Gonzales*, 437 F.3d 229, 235 (2d Cir. 2006) (instructing the Immigration Judge to consider both whether the alien received an actual offer of permanent resident status in Senegal and other factors including his family ties, business and property connections, and whether he enjoyed the same legal rights to work and enter and leave the country as those who are permanently settled).

The respondent can seek to rebut DHS' prima facie evidence of an offer of firm resettlement "by showing by a preponderance of the evidence that such an offer has not, in fact, been made or that . . . she would not qualify

---

[3]  Prior to the Board's decision, the United States Court of Appeals for the Second Circuit, in which jurisdiction this case arises, adopted the "totality of the circumstances" approach to firm resettlement determinations in *Sall v. Gonzales*, 437 F.3d 229, 233 (2d Cir. 2006).  As we observed in *Matter of A-G-G-*, 25 I&N Dec. at 495–96, that approach considers evidence of a direct offer of firm resettlement as a factor to be considered together with indirect evidence.  The four-step framework in *Matter of A-G-G-*, 25 I&N Dec. at 501–03, is consistent with the totality of the circumstances approach.  *See also Tchitchui v. Holder*, 657 F.3d 132, 135 (2d Cir. 2011) (stating that the burden is on DHS to establish a prima facie case of firm resettlement and that the burden then shifts to the alien to show that he or she qualifies for an exception).  Although the Second Circuit has not directly applied the four-part framework, the parties did not dispute before the Immigration Judge or on appeal that the *Matter of A-G-G-* framework applies in this case.  Moreover, the outcome of this case would be the same regardless of the approach we apply.

for it." *Matter of A-G-G-*, 25 I&N Dec. at 503. The Immigration Judge "will consider the totality of the evidence presented by the parties to determine whether [the respondent] has rebutted . . . DHS' evidence of an offer of firm resettlement." *Id.*; *accord Sall*, 437 F.3d at 233. If the Immigration Judge finds the respondent firmly resettled, the burden then shifts to the respondent to establish that an exception to firm resettlement set forth in the regulations applies by a preponderance of the evidence. *Matter of A-G-G-*, 25 I&N Dec. at 503; *accord Tchitchui v. Holder*, 657 F.3d 132, 135 (2d Cir. 2011).

An offer of firm resettlement may take different forms. While in some cases an offer of firm resettlement consists of a pathway to becoming a permanent resident or citizen of a third country, the regulation governing firm resettlement also contemplates an offer of "some other type of permanent resettlement." 8 C.F.R. § 1208.15; *see also Sall*, 437 F.3d at 233 (noting that because 8 C.F.R. § 1208.15 refers to "some other type of permanent resettlement," it permits an offer of firm resettlement to come in forms other than an "actual offer of permanent resident status"). "'[O]ffers' of 'some other type of permanent resettlement' may not always include written documentation, much less formal state-issued identification cards." *Sall*, 437 F.3d at 233. Indirect evidence of an offer of firm resettlement may include "whether the alien had legal rights normally given to people who have some official status, such as the right to work and enter and exit the country." *Matter of A-G-G-*, 25 I&N Dec. at 502; *see also Sall*, 437 F.3d at 235 (instructing the Immigration Judge to consider the alien's legal right to work and enter and leave the country when determining firm resettlement).

## B. Application to the Respondent

In this case, DHS did not present direct evidence that an offer of firm resettlement was made to the respondent in India. *See Matter of A-G-G-*, 25 I&N Dec. at 501–02 (describing "direct evidence" as "governmental documents indicating an alien's ability to stay in a country indefinitely . . . includ[ing] evidence of refugee status, a passport, a travel document, or other evidence indicative of permanent residence"). The Immigration Judge properly determined that the respondent's testimony regarding her ability to enter and live in India did not constitute direct evidence of an offer of firm resettlement. However, the Immigration Judge concluded that DHS met its burden of presenting prima facie evidence of an offer of firm resettlement through indirect evidence.

We discern no clear error in the Immigration Judge's findings regarding the respondent's ability to live and work legally in India. *See* 8 C.F.R. § 1003.1(d)(3)(i). In support of the firm resettlement bar, DHS submitted

various country conditions documents, including a copy of the 1950 Treaty of Peace and Friendship between India and Nepal ("India-Nepal Treaty"), obtained from the Ministry of External Affairs website for the Government of India. Article 6 of the treaty provides that "[e]ach government undertakes . . . to give to the nationals of the other, in its territory, national treatment with regard to participation in industrial and economic development of such territory and to the grant of concessions and contracts relating to such development." Article 7 of the treaty provides that "[t]he Governments of India and Nepal agree to grant, on a reciprocal basis, to the nationals of one country in the territories o[f] the other the same privileges in the matter of residence, ownership of property, participation in trade and commerce, movement and other privileges of a similar nature."

An article DHS submitted regarding the India-Nepal Treaty states that the treaty allows for free movement of goods between countries and allows Nepali and Indian nationals to cross the border without a passport or visa, "live and work in either country, and own property or do trade or business in either country." (Emphasis omitted). The article notes that as a result of the treaty, there are millions of Nepalis living, working, and owning property in India.

DHS also submitted a document from the Research Directorate of the Immigration and Refugee Board of Canada regarding the status of Nepalese citizens in India. The document provides that, due to the treaty, "citizens of Nepal may reside, work, attend school and access health services in India" and "are not considered 'illegal' residents." Citing a British Broadcasting Corporation article from 2008, the document states that approximately 5 million Nepalese citizens work and own property in India and do not require visas or work permits to cross the border. The document also cites information from the Bureau of Immigration in India providing that "citizens of Nepal do not require visas to enter India, unless they are entering India from China," and that Nepalese citizens, when entering India by land or air from Nepal, require valid identification but not a passport.

The respondent's testimony about her ability to enter India and work and live there is consistent with the documentary evidence submitted by DHS. The respondent testified that she and her parents did not require a visa to enter India and that the Indian Government would allow them to continue living there. The respondent testified that she lived and worked in India for approximately 5 years and was otherwise not restricted from residing there indefinitely. She agreed with DHS' counsel at the hearing that "anyone from Nepal can just simply go to India [and] live and work there." Based on the foregoing, the Immigration Judge correctly concluded that DHS met its

initial burden by presenting indirect evidence of an offer of "some other type of permanent resettlement." 8 C.F.R. § 1208.15; *see also Matter of A-G-G-*, 25 I&N Dec. at 501–03. *See generally Tchitchui*, 657 F.3d at 136 (holding that the totality of an applicant's activities in the third country were "relevant to the question of whether his permanent residency [there] created a place to turn to seek refuge" from the country he or she fled).

Turning to the second step of our analysis of firm resettlement, we consider whether the respondent has rebutted DHS' prima facie evidence of an offer of firm resettlement. The respondent asserts on appeal that she has not been offered any form of "enduring legal status" in India. However, an offer of firm resettlement is not limited to a path to permanent residency or citizenship. As noted above, an alien may be firmly resettled in a third country if he or she received an offer of "some other type of permanent resettlement." 8 C.F.R. § 1208.15. Because of the India-Nepal Treaty, the respondent was not considered in unlawful status while living and working in India and could continue to legally live and work there indefinitely.

Additionally, although the respondent attempts to rebut DHS' evidence by arguing that there was no evidence that the Indian Government was aware of her presence, "the regulations only require that an offer of firm resettlement was available." *Matter of A-G-G-*, 25 I&N Dec. at 503. The Indian Government need not be aware of the respondent's presence if it "accepted as permanent a class of persons to which [the respondent] belongs." *Makadji v. Gonzales*, 470 F.3d 450, 456 (2d Cir. 2006). Here, the Indian Government has accepted the permanent presence of Nepalese citizens by virtue of the India-Nepal Treaty and the rights given to Nepalese citizens to live, work, and own property in India. As a Nepalese citizen, the Indian Government consented to the respondent's lawful presence in India. *See id.* at 455 (observing that many courts have found "a formal or express 'offer'" is not needed "if the circumstances of the person's existence in a country demonstrate that the person was effectively accepted by that nation as a permanent resident").

The respondent also contends her living and working situation was not permanent and that she worked and lived in the same hotel out of necessity. In addition, she asserts that although the evidence in the record shows "nominal notions of economic reciprocity between India and Nepal, the reality of life for Nepalese in India is often miserable." The respondent has submitted country conditions evidence that Nepalese in India often endure discrimination and harassment, poor housing conditions, and limited employment opportunities.

We agree with the Immigration Judge that the respondent did not rebut DHS' evidence that she was offered permanent resettlement in India. Evidence that a respondent had a legal right to enter, live, work, and own property indefinitely in the country of proposed resettlement demonstrates that the respondent was offered "some other type of permanent resettlement" for purposes of the firm resettlement bar.  8 C.F.R. § 1208.15.  The Immigration Judge found based on the documentary evidence and the respondent's testimony that the India-Nepal Treaty granted the respondent the same privileges in "residence[,] ownership of property, participation in trade and commerce, [and] movement" as citizens of India.    While the respondent has presented evidence that many Nepalese in India live in poor conditions and do not have stable employment, this does not overcome the evidence that the Indian Government offered the respondent permanent resettlement in India.

The respondent also contends that an exception to the firm resettlement bar applies because the conditions of her residence in India "were so substantially and consciously restricted by the authority of the country of refuge that . . . she was not in fact resettled."  8 C.F.R. § 1208.15(b).  The respondent argues that she remained afraid that Maoists would find and attack her while living in India.  Although she asserts on appeal that Maoists move freely across the border, she did not submit any evidence before the Immigration Judge to support this assertion.  *See INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) (noting that unsupported statements from counsel in an appellate brief do not constitute facts in evidence).  Furthermore, the Immigration Judge found that Maoists did not attack nor contact the respondent while she was in India, and she did not establish that the Indian Government was not able or willing to protect her.

The respondent also argues that she lacked the right to vote and participate in the electoral process in India.  However, the respondent has not cited any legal authority requiring that an offer of firm resettlement include the right to vote.  *Cf. Matter of K-S-E-*, 27 I&N Dec. 818, 822 (BIA 2020) (finding that "the right to vote . . . is generally reserved for citizens" and that an alien did not establish an exception to firm resettlement based on restrictions to this right), *vacated by Sylvestre v. Garland*, No. 20-71316, 2021 WL 2453043 (9th Cir. June 9, 2021).  We note that lawful permanent residents in the United States generally do not have the right to vote.  *See L. Xia v. Tillerson*, 865 F.3d 643, 650 (D.C. Cir. 2017) ("Many invaluable benefits flow from United States citizenship, including [the] right[] to vote in federal elections . . . .").  Based on the foregoing, the respondent has not established that the conditions of her residence in India were substantially

and consciously restricted by the Indian Government such that she has established an exception to the firm resettlement bar. 8 C.F.R. § 1208.15(b).

## C. Motion to Remand

The respondent submitted new evidence on appeal, which we construe as a motion to remand. *See Matter of L-A-C-*, 26 I&N Dec. 516, 526 (BIA 2015). The respondent contends that the new evidence, which consists of a news article about the Maoists' influence currently in India and an article about problems with the India-Nepal Treaty, supports an exception to firm resettlement. The first news article discusses efforts by the Maoists to rebuild and strengthen their urban network in India. The second news article discusses tensions between Nepal and India and a general feeling among Nepalese that they are not treated equally under the India-Nepal Treaty.

Although the proffered news articles were previously unavailable, the respondent has not shown that the new evidence would likely change the result of the firm resettlement bar. *See Sanusi v. Gonzales*, 445 F.3d 193, 201 (2d Cir. 2006) (upholding the Board's denial of a motion to remand to submit new evidence regarding the alien's prior claim for protection under the Convention Against Torture because the alien did not demonstrate that the new evidence would have changed the disposition of the case). The new evidence does not show that the respondent's ability to live in India would be "substantially or consciously restricted by the authority of the country of refuge." 8 C.F.R. § 1208.15(b). Although the first article discusses the rebuilding of the Maoist network in India, it provides that the Indian Government is taking steps to address this issue by convening a meeting of leadership from all Maoist-affected states. Furthermore, though the respondent's second article and previously submitted evidence highlight inequalities that Nepalese face in India, the evidence does not demonstrate that any restrictions on the respondent's conditions of residence are "by the authority of the country of refuge." 8 C.F.R. § 1208.15(b). The India-Nepal Treaty continues to allow Nepalese to legally live and work freely in India. Therefore, the respondent has not shown that remand to the Immigration Judge is warranted for consideration of the newly submitted evidence.

## III. CONCLUSION

Based on the foregoing, we agree with the Immigration Judge that the respondent was firmly resettled in India. The provisions of the India-Nepal Treaty, the respondent's lengthy residence in India after leaving Nepal, and her ability to work in India are sufficient to establish that she received an offer of "some other type of permanent resettlement." 8 C.F.R. § 1208.15.

Additionally, the respondent has not demonstrated that an exception to the firm resettlement bar applies. Thus, the respondent is statutorily ineligible for asylum.[4]

**ORDER:** The respondent's appeal of the Immigration Judge's denial of asylum from Nepal is dismissed.

**FURTHER ORDER:** The motion to remand is denied.

**NOTICE TO RESPONDENT/APPLICANT TO CONTACT DHS/USCIS:** The Board of Immigration Appeals has issued a final decision in your case. Depending on the type of relief or protection from removal that you have been granted, you may be entitled to documents evidencing your status allowing you to remain in the United States or you may be eligible to work in this country. However, in order to receive any documentation, you need to contact the U.S. Citizenship and Immigration Services ("USCIS") of DHS, which is the agency responsible for the issuance of documents evidencing your status and/or work authorization. Information regarding the specific USCIS instructions can be found at www.uscis.gov (search "Post-Order Instructions" or "Notice to Individuals Granted Immigration Benefits by an Immigration Judge or the Board of Immigration Appeals") on procedures for obtaining status documentation or work authorization. Additionally, the Executive Office for Immigration Review ("EOIR") website at www.justice.gov/eoir contains a link to the USCIS webpage which in turn links to the "Post Order Instructions." You may also call the USCIS national customer service number at 1-800-375-5283.

**NOTICE**: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2025).

---

[4] As noted earlier, the Immigration Judge granted withholding of removal and DHS did not appeal. DHS has informed the Board that the respondent's background checks are current.